[No. H020650. Sixth Dist. July 31, 2001.]

In re the Marriage of NICK and VOULA PETROPOULOS.
NICK PETROPOULOS, Appellant, v.
VOULA PETROPOULOS, Appellant.

**COUNSEL**

Law Offices of John F. Schuck and John F. Schuck for Appellant Nick Petropoulos.

W. Kenneth Howard for Appellant Voula Petropoulos.

**OPINION**

**WUNDERLICH, J.**—In this case, we review two orders entered in a marital dissolution action. One order modifies spousal support and the other awards sanctions.

In the first order, the trial court retroactively reduced the husband's spousal support obligation and allowed him a partial recovery of his support overpayments. Both parties challenge that order. Arguing against the husband's recovery of any support overpayments, the wife asserts that the trial court should have retroactively applied the statute in force at the time

modification was ordered. By cross-appeal, the husband seeks full reimbursement of all overpayments; he argues for retroactive application of a later amendment to the statute. As we explain below, we agree with the husband's view. We therefore reverse the support modification order and remand with instructions to the trial court to give retroactive effect to the most recent amendments to the governing statute.

In the second order, the trial court awarded attorneys' fees to the husband as a sanction against the wife. She challenges that award on procedural grounds. We find no error and affirm the fee award.

### FACTS AND PROCEDURAL HISTORY

Nick Petropoulos (Husband) and Voula Petropoulos (Wife) divorced after a 25-year marriage. A status-only dissolution was granted in September 1993.

In June 1995, Robert Redding was appointed as a special master to make findings and recommendations regarding the parties' income and assets for purposes of property division and spousal support. After lengthy hearings on the matter, the special master filed his findings and recommendations. Among other things, he recommended the in-kind division of the parties' seven residential real properties, with the result that each party would own at least two properties with a rental income stream. The special master also concluded that Husband should pay Wife $2,000 per month as spousal support, based on the marital standard of living and on the parties' respective incomes. The trial court adopted the special master's recommendations in February 1996.

In November 1996, Husband sought a reduction in his spousal support obligation. Wife filed a cross-motion to increase the spousal support Husband was paying her.

In September 1997, the court again appointed Robert Redding as a special master, this time to determine the parties' income and assets for purposes of the spousal support modification motions. The hearing on that reference took place over the course of four days in October and November 1998. Partway through the special master's hearing, the parties attended a court case management conference, at which Husband sought to expand the ongoing reference to include credibility determinations. The court granted Husband's request, and on October 29, 1998, it ordered the special master to make findings regarding the parties' credibility. Wife moved for reconsideration of that order, but the court denied her motion.

The special master filed his findings in May 1999. Those detailed findings included determinations of the parties' assets and debts, as well as their respective incomes for 1996, 1997, and 1998. The special master also made explicit findings that Wife was not credible and that her conduct frustrated settlement.

Thereafter, the trial court conducted an evidentiary hearing on the spousal support motions, which took place over the course of three days in July and August 1999. The judge entertained testimony from both Husband and Wife, from Husband's expert, and from the special master. The judge then heard argument from both parties before taking the matter under submission.

At the evidentiary hearing, the trial court also gave the parties a briefing schedule for submitting the issue of attorneys' fees. So far as the record discloses, neither party requested a separate hearing regarding fees.

On August 24, 1999, the court issued its order modifying spousal support. In that modification order, the court reduced Husband's spousal support obligation by varying amounts for 1996, 1997, 1998, and 1999. The court determined that Husband was entitled to reimbursement for the support overpayments he had made during the years 1996-1998, but it concluded that Husband was not entitled to recoup overpayments made in 1999 because the amended statute then in effect prohibited reimbursement.

As to attorneys' fees, the court's August 1999 order stated that the fee issue would be deemed submitted when the parties filed declarations. Both sides submitted declarations thereafter. The court issued its order regarding attorneys' fees on October 7, 1999. That order directed Wife to pay Husband $30,000 in attorneys' fees as a sanction.

Wife filed a timely appeal from the court's orders of August 1999 and October 1999. Husband cross-appealed the August 1999 order to the extent it denied him reimbursement for support overpayments made in 1999.

ISSUES

The following issues are before us:

1. Did the trial court misapply the governing statute in determining Husband's right to recover support overpayments? This issue is raised both by Wife on appeal and by Husband on cross-appeal.

2. Did the trial court improperly delegate its judicial authority by ordering and relying on the referee's credibility findings, as Wife contends in her appeal?

3. Did the trial court deprive Wife of her right to a hearing on the issue of sanctions, as she claims?

4. Is Husband entitled to an award of attorneys' fees on appeal, as he asserts?

DISCUSSION

We discuss each issue in turn.

### 1. Right to Recover Support Overpayments

 Wife and Husband both assert that the trial court erred in applying the governing statute, Family Code section 3653.[1] In her appeal from the August 1999 order, Wife claims that it was error for the court to reimburse Husband for support overpayments made in 1996, 1997, and 1998. That claim is based on her contention that the trial court should have retroactively applied the statute then in place, which prohibited reimbursement of overpayments. In his cross-appeal, Husband urges retroactive application of the statute as subsequently amended, which permits the recovery of overpayments that result from retroactive reduction or termination of support.

#### a. Standard of Review

 The parties' dispute over which version of the law to apply requires us to determine and interpret the governing statute and to apply that statute to undisputed facts. We are thus presented with a question of law, which we review de novo. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1426 [95 Cal.Rptr.2d 57].) ·

#### b. Evolution of the Statute

·The parties' disagreement over the governing statute has its origins in recent statutory amendments. Resolving that dispute requires an appreciation for how and when the statute changed while the parties' cross-motions for support modification were pending. For that reason, we begin by briefly describing the statute's evolution.

---

[1]Further statutory references are to the Family Code unless otherwise specified.

*Original enactment:* As originally enacted, former section 3653 provided for the retroactivity of orders modifying or terminating support, but the statute was silent on the permissibility of recovering excess payments.[2]

*1999 Version:* Former section 3653 was amended by legislation passed in 1998.[3] As relevant here, the 1998 legislation, which became effective January 1, 1999, added subdivision (c). The amendment prohibited support obligors from recouping any overpayments resulting from a retroactive reduction or termination of support.

*2000 Version:* Legislation enacted less than a year later rewrote section 3653, subdivision (c).[4] That amendment, which became effective on January 1, 2000, completely reversed the provision's effect. In contrast to the predecessor provision, the current subdivision allows the court to order repayment of excess support following a retroactive reduction.

■ To resolve the issue presented in this case, we must determine which version of the statute applies and whether it applies retroactively. As noted above, Wife argues for retroactive application of the 1999 version of the statute, while Husband urges retroactive application of the 2000 version.

[2]In its entirety, the provision read as follows: "An order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date, except as provided by federal law (42 U.S.C. Sec. 666(a) (9))." (Former § 3653 added by Stats. 1992, ch. 162, § 10, p. 568, operative Jan. 1, 1994.)

[3]The relevant portion of that provision read as follows: "If an order decreasing or terminating a support order is entered retroactively pursuant to this section, the support obligor shall nevertheless not be entitled to, and the support obligee shall have no obligation to repay, any amounts previously paid by the support obligor pursuant to the prior order that are in excess of the amounts due pursuant to the retroactive order." (Former § 3653, subd. (c) added by Stats. 1998, ch. 854, § 1, operative Jan. 1, 1999.) For clarity, we refer to this iteration of the statute as the 1999 version.

[4]The relevant portion of the current provision reads as follows: "If an order decreasing or terminating a support order is entered retroactively pursuant to this section, the support obligor may be entitled to, and the support obligee may be ordered to repay, according to the terms specified in the order, any amounts previously paid by the support obligor pursuant to the prior order that are in excess of the amounts due pursuant to the retroactive order. The court may order that the repayment by the support obligee shall be made over any period of time and in any manner, including, but not limited to, by an offset against future support payments or wage assignment, as the court deems just and reasonable. In determining whether to order a repayment, and in establishing the terms of repayment, the court shall consider all of the following factors:

"(1) The amount to be repaid.

"(2) The duration of the support order prior to modification or termination.

"(3) The financial impact on the support obligee of any particular method of repayment such as an offset against future support payments or wage assignment.

"(4) Any other facts or circumstances that the court deems relevant."

(§ 3653, subd. (c), as amended by Stats. 1999, ch. 653, § 4, operative January 1, 2000.) For clarity, we refer to this most recent iteration of the statute as the 2000 version.

### c. *Retroactivity*

In response to both parties' contentions, we first observe that there is a long-standing and well-established presumption against the retroactive application of statutes. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371].) "It is a widely recognized legal principle, specifically embodied in section 3 of the Civil Code,[5] that in the absence of a clear legislative intent to the contrary statutory enactments apply prospectively." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1193-1194 [246 Cal.Rptr. 629, 753 P.2d 585].)

In determining legislative intent, we begin with the words of the statute. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1205 [31 Cal.Rptr.2d 776, 875 P.2d 1279].) Here, the statute is silent regarding its prospective or retroactive application. "But the statutory language does not furnish the only resource at our disposal." (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 587, fn. omitted.) A statute may be "clothed . . . with retroactive effect despite the silence of its language on the issue and the presumption against retroactive application." (*Ibid.,* citing *In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].)[6] Where the statute is silent, the courts "address 'all pertinent factors' when attempting to divine the legislative purpose. A wide variety of factors may illuminate the legislative design, 'such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' [Citations.]" (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 587.) Thus, on occasion, the presumption of prospectivity has given way where "the legislative history or the context of the enactment provided a sufficiently clear indication that the Legislature intended the statute to operate retrospectively that we found it appropriate to accord the statute a retroactive application." (*Evangelatos v. Superior Court, supra,* 44 Cal.3d at p. 1210, citing *Marriage of Bouquet, supra,* 16 Cal.3d 583 and *Mannheim v. Superior Court* (1970) 3 Cal.3d 678, 686 [91 Cal.Rptr. 585, 478 P.2d 17].) Absent a sufficiently clear indication of legislative intent, however, courts will apply " 'the almost universal rule that statutes are addressed to the future, not to the past.' " (*Evangelatos v. Superior Court, supra,* 44 Cal.3d. at p. 1226, quoting *Winfree v. Nor. Pac. Ry. Co.* (1913) 227 U.S. 296, 301 [33 S.Ct. 273, 274, 57 L.Ed. 518].)

---

[5]Section 3 of the Civil Code provides: "No part of [the Civil Code] is retroactive, unless expressly so declared."

[6]The California Supreme Court later questioned the applicability of *In re Estrada* to civil cases, noting that "the rationale for the *Estrada* ruling bears little relationship to the determination of the retroactivity of most nonpenal statutes . . . ." (*Evangelatos v. Superior Court, supra,* 44 Cal.3d at p. 1210, fn. 15.)

■ To determine whether the Legislature signified an intent that this statute operate retroactively with sufficient clarity, we look to the legislative history of the two recent amendments to section 3653.

*1999 Version:* Section 3653, subdivision (c), was added by Assembly Bill No. 960 (1997-1998 Reg. Sess.), effective January 1, 1999. That provision expressly denied support obligors the right to recoup overpayments. But nothing in the legislative history of Assembly Bill No. 960 sheds light on the Legislature's reasons for adding subdivision (c).

*2000 Version:* Subdivision (c) was amended during the next legislative session as part of Assembly Bill No. 380 (1999-2000 Reg. Sess.). As noted above, that amendment resulted in a complete reversal of the prior law. Where the former provision prohibited recoupment of excess payments, the current provision allows it. The statute's current iteration is the product of Senate floor amendments to Assembly Bill No. 380 made on September 7, 1999. According to the Senate Rules Committee, those amendments would "allow the court to . . . order the support obligee to repay any amounts paid by the obligor in excess of the modified order. *This amendment is necessary to fix a mistake from a bill that was enacted last year.*" (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 380 (1999-2000 Reg. Sess.) as amended Sept. 7, 1999, p. 2, italics added.) With those amendments in place, the Senate approved the bill on September 9, 1999, and sent it to the Assembly. The Assembly concurred in the Senate amendments then passed the bill. As noted in the Assembly's concurrence, "The Senate amendments also add a provision relating to retroactivity of child support upon modification of a support. . . . This provision . . . is intended to address a concern arising due to a last minute amendment to AB 960 . . . ." (Concurrence in Sen. Amends., Assem. Bill No. 380 (1999-2000 Reg. Sess.) as amended Sept. 7, 1999, coms., p. 3.)

The Legislature's acknowledgement that the latest amendment was needed "to address a concern" and "to fix a mistake" suggests that it intended retroactive application. That suggestion gains vitality when considered in the context of the evolution of this statute: the first express provision governing recovery of overpayments was added to the then-silent statute by the "mistaken" 1998 legislation. In other words, the current, corrected version of the provision appears to be the very one the Legislature intended to enact in the first place. The legislative history of this enactment thus clearly signals an intent that the statute be applied retroactively. (See *In re Marriage of*

*Bouquet, supra,* 16 Cal.3d at p. 591.)[7] Significantly, we find no "conflicting indicia" in the legislative history to counter the suggestion that retroactive application was intended. (*Ibid.*) "In short, the only indicators of legislative intent ascertainable in this case call for the retroactive application of the amendment." (*Ibid.*) These indicators are sufficient to overcome the presumption against retroactive application. (*Ibid.*) We conclude, therefore, that the Legislature intended retroactive application of the 2000 version of section 3653, subdivision (c).

In reaching that conclusion, we are not unmindful of the "special considerations—quite distinct from the merits of the substantive legal change embodied in the new legislation—that are frequently triggered by the application of a new, 'improved' legal principle retroactively to circumstances in which individuals may have already taken action in reasonable reliance on the previously existing state of the law." (*Evangelatos v. Superior Court, supra,* 44 Cal.3d at pp. 1213-1214.) ▆▆▆ "The presumption of prospectivity assures that reasonable reliance on current legal principles will not be defeated in the absence of a clear indication of a legislative intent to override such reliance." (*Id.* at p. 1214; see also *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 446 [224 Cal.Rptr. 333, 715 P.2d 253].) ▆▆▆ In this case, however, we find no basis for reliance because there was no established legal doctrine governing reimbursement of support overpayments prior to enactment of the short-lived, mistaken enactment of the 1999 version of section 3653. (But cf. *In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 739-740 [137 Cal.Rptr. 568] [error to order reimbursement where support obligor did not request modification].) We therefore consider this an appropriate case in which to give effect to the Legislature's apparent intent.

[7]Although the California Supreme Court appears to have limited the holding of *Marriage of Bouquet* with its decision in *Evangelatos,* that later decision did not abrogate the rule of statutory construction that intent concerning retroactivity may be gleaned from the legislative history of a statute. (See *Evangelatos v. Superior Court, supra,* 44 Cal.3d at pp. 1210-1211.) The legislative history of *Marriage of Bouquet* included "the Legislature's adoption of a resolution, shortly after the enactment of the measure, indicating that the retroactivity question was specifically discussed during the legislative debate on the measure and declaring that the provision was intended to apply retroactively . . . ." (*Id.* at p. 1211, discussing *Marriage of Bouquet, supra,* 16 Cal.3d at pp. 588-591.) Similarly, in another case discussed in *Evangelatos,* "the statute in question incorporated by reference a separate statutory scheme which had expressly been made retroactive . . . ." (*Evangelatos v. Superior Court, supra,* 44 Cal.3d at p. 1211, discussing *Mannheim v. Superior Court, supra,* 3 Cal.3d at pp. 686-687.) By contrast, in *Evangelatos,* where a ballot measure was under scrutiny, there was "nothing in the election brochure materials which provide any comparable confirmation of an actual intention on the part of the drafters or electorate to apply the statute retroactively." (*Evangelatos v. Superior Court, supra,* 44 Cal.3d at p. 1211.)

In this case, the legislative history does not include any express mention of retroactivity; nevertheless, in our view, the legislative acknowledgement that statutory amendment was needed to correct a mistake provides a sufficiently clear indication of intent to apply the amended statute retroactively.

The Legislature's intent notwithstanding, we may not give a statute retroactive effect if doing so offends constitutional principles. (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354].) ▮ "In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions. [Citations.]" (*In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 592-593.)

Statutes "can be applied retroactively if such a retroactive application is necessary to subserve a sufficiently important state interest." (*Marriage of Bouquet, supra,* 16 Cal.3d at p. 593.) Important state interests include the Legislature's "abiding supervision of marital property and dissolutions." (*Id.* at p. 594.) This is particularly true where the legislation aims to rectify an injustice. "The state's interest in the equitable dissolution of the marital relationship supports this use of the police power to abrogate rights in marital property that derived from the patently unfair former law." (*Ibid.*) ▮ In this case, the former law may be characterized as "patently unfair" to the extent it prevented support obligors from collecting adjudicated overpayments. Conversely, nothing in the amended statute takes away any entitlement belonging to Wife. (See *San Bernardino County v. Indus. Acc. Com.* (1933) 217 Cal. 618, 629 [20 P.2d 673].)

Given the state's important interest in ensuring that family support is equitable, we conclude that giving retroactive effect to the 2000 version of the statute is an appropriate exercise of legislative authority.

### d. *Application to This Case*

We have determined that the 2000 version of section 3653, subdivision (c), should be applied retroactively. We further conclude that that version of the statute governs the parties' rights in this case, since those rights "have not been finally adjudicated . . . ." (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 594; see also *Younger v. Superior Court* (1978) 21 Cal.3d 102, 110 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Chapman v. Farr* (1982) 132 Cal.App.3d 1021, 1025 [183 Cal.Rptr. 606].)

Applying that statute here, it is apparent that the trial court had the statutory authority to order reimbursement of the support overpayments for the entire period from the filing of Husband's modification motion in 1996

until its determination nearly three years later, including for the year 1999. It is equally apparent that the trial court did not appreciate its authority to make such an order. We therefore remand this matter to the trial court with instructions to exercise its discretion under section 3653, subdivision (c), as currently enacted, taking into account all the factors set forth in that provision.

### 2. *Determinations by the Special Master*

██ Wife next takes issue with the trial court's reliance on the findings of the special master as they relate to credibility. Wife's claim of error on this point is two-pronged. First, she argues that a reference for credibility is an unauthorized delegation of judicial power. Second, she asserts that the trial court improperly relied on the referee's credibility findings.[8]

### a. *Standards of Review*

██ Wife's first claim, that a credibility reference is in excess of a referee's authority, presents a question of law for our independent review. (Cf. *Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 711 [49 Cal.Rptr.2d 722].) Wife's second claim, that the trial judge improperly relied on the referee in this case, is based on the factual record. We measure that claim against the substantial evidence rule, indulging all reasonable inferences to uphold the court's order. (*Ibid.*; *Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1254-1255 [54 Cal.Rptr.2d 340].)

### b. *Reference to the Special Master*

██ By statute, a court may direct a special reference on a question of fact. (Code Civ. Proc., § 639.)[9] "A reference by the trial court involves the sending of a pending action or proceeding, or some issue raised therein, to a

---

[8] Wife also suggests that the reference somehow was improper because it added yet another fact finder to a case that involved five different judges. (Cf. *In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 809 [81 Cal.Rptr.2d 797].) We reject that suggestion of error as unsupported. (*People ex rel. Sepulveda v. Highland Fed. Savings & Loan* (1993) 14 Cal.App.4th 1692, 1703, fn. 5 [19 Cal.Rptr.2d 555].)

[9] Code of Civil Procedure, section 639, subdivision (a), provides as follows:

"When the parties do not consent, the court may, upon the written motion of any party, or of its own motion, appoint a referee in the following cases:

"(1) When the trial of an issue of fact requires the examination of a long account on either side; in which case the referees may be directed to hear and decide the whole issue, or report upon any specific question of fact involved therein.

"(2) When the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect.

"(3) When a question of fact, other than upon the pleadings, arises upon motion or otherwise, in any stage of the action.

referee for hearing, determination and report back to the court. The procedure is most commonly employed where complicated accounts can more conveniently be examined or taken outside of court, and to resolve discovery disputes or certain types of family law issues. [Citations.]" (*Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1521 [76 Cal.Rptr.2d 322].) The trial court may order a special reference without the parties' consent. (*Id.* at p. 1522.) In such cases, the authority of the referee or special master is limited to resolving specific questions of fact. (*Ibid.*) The referee's factual findings are advisory recommendations only; they are not binding unless the trial court adopts them. (*Ibid.*; accord, *Estate of Beard* (1999) 71 Cal.App.4th 753, 777 [84 Cal.Rptr.2d 276]; *Kim v. Superior Court* (1998) 64 Cal.App.4th 256, 261 [75 Cal.Rptr.2d 468].) Nevertheless, "the referee's recommendations are entitled to great weight. [Citations.]" (*Estate of Beard, supra,* 71 Cal.App.4th at p. 777.)

■■■ In this case, the special master was ordered to assess the parties' credibility. Wife challenges that aspect of the reference as improper, a challenge we reject. As fact finders, referees necessarily make credibility determinations. (See, e.g., *In re Rose* (1965) 62 Cal.2d 384, 390 [42 Cal.Rptr. 236, 398 P.2d 428].) They act properly and within their authority in doing so. (*In re Rosoto* (1974) 10 Cal.3d 939, 946 [112 Cal.Rptr. 641, 519 P.2d 1065, 69 A.L.R.3d 980]; *Holt v. Kelly* (1978) 20 Cal.3d 560, 563 [143 Cal.Rptr. 625, 574 P.2d 441].)

c. *Reliance on the Referee's Findings*

We also reject Wife's contention that the trial court improperly relied on the referee's credibility findings. The court explicitly recognized that it was not bound by the special master's findings and unequivocally stated that it would make its own credibility determinations. The court had ample opportunity to make independent credibility assessments during the evidentiary hearing it conducted, which took place over three court days and which included testimony by Husband, Wife, and the special master.[10] (Cf. *De Guere v. Universal City Studios, Inc.* (1997) 56 Cal.App.4th 482, 505 [65 Cal.Rptr.2d 438].)

---

"(4) When it is necessary for the information of the court in a special proceeding.

"(5) When the court in any pending action determines that it is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon."

[10]In his testimony, the special master explained in some detail the basis for his adverse findings about Wife's credibility, including the inaccuracy of her tax returns, her submission of duplicative receipts for expenses, and contradictions between various statements she made under oath. In her own testimony at the court hearing, Wife was cross-examined about discrepancies in her various sworn statements. Given all of this testimony, we reject Wife's contention that "the trial court itself did not witness uncredible behavior" on her part.

On this record, there is no factual or legal basis for Wife's claim that the reference resulted in an unauthorized delegation of judicial power.

### 3. *Sanctions.*

 The court assessed attorneys' fees against Wife as a sanction, pursuant to section 271.[11] That statute advances the policy of the law "to promote settlement and to encourage cooperation which will reduce the cost of litigation." (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 [22 Cal.Rptr.2d 537].) Family law litigants who flout that policy by engaging in conduct that increases litigation costs are subject to the imposition of attorneys' fees and costs as a sanction. (*Ibid.*; accord, *In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 82 [84 Cal.Rptr.2d 739].)

 Wife does not dispute the court's statutory authority to impose sanctions, nor does she challenge the evidentiary basis for the court's exercise of that authority in this case. As grounds for reversal, Wife asserts only that the statute requires notice and a hearing, which the trial court did not provide. In addition, she argues, the trial court failed to consider whether the sanctions it ordered impose an unreasonable financial burden on her.

### a. *Standards of Review*

 Wife's assertions regarding the statute's notice and hearing requirements require us to interpret section 271. Those assertions therefore present a question of law for our independent review. (*California Teachers Assn. v. San Diego Community College Dist., supra,* 28 Cal.3d at p. 699.) In assessing Wife's further contention that the trial court failed to consider the financial

---

[11]Section 271 provides as follows: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award.

"(b) An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard.

"(c) An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property."

burden of its sanction award, we indulge all reasonable inferences to uphold the trial court's order. (See, e.g., *Jordan v. City of Santa Barbara, supra,* 46 Cal.App.4th at pp. 1254-1255; *Dolan v. Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1504 [29 Cal.Rptr.2d 903].) We will not interfere with the order for sanctions unless the trial court abused its broad discretion in making it. (*In re Marriage of Burgard, supra,* 72 Cal.App.4th 74, 82 [§ 271]; see also *Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 996 [35 Cal.Rptr.2d 93] [Code Civ. Proc., § 128.5].)

### b. *Notice and Hearing*

The relevant portion of the statute provides as follows: "An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." (§ 271, subd. (b); see *In re Marriage of Hublou* (1991) 231 Cal.App.3d 956, 965, fn. 5 [282 Cal.Rptr. 695] [decided under predecessor statute].)

With respect to the notice requirement, Wife claims: "At no time did the trial court indicate or comment upon its intention to consider Section 271 sanctions." As the record indicates, however, Wife was well aware that she was subject to such sanctions even if the trial court did not expressly say so. First, the order expanding the special master's charge included an express reference to section 271 sanctions, as did the order denying Wife's request for reconsideration of the expansion. Thereafter, the special master found that Wife had engaged in conduct that would justify sanctions against her under section 271. Those findings were before the court. In addition, in an application filed prior to the court hearing, Husband requested that the court award fees based on Wife's conduct. Wife filed a response to that request in which she asserted that she "should not be sanctioned under § 271." Wife repeated that assertion in her trial brief, again with an express citation to section 271. Finally, at the hearing itself, at least one explicit reference to section 271 was made during the discussions about the procedure for submitting the fee issue. In short, this record clearly demonstrates that Wife had adequate notice that she might be sanctioned under section 271. (See *In re Marriage of Quay, supra,* 18 Cal.App.4th at p. 970; *On v. Cow Hollow Properties* (1990) 222 Cal.App.3d 1568, 1576 [272 Cal.Rptr. 535] [Code Civ. Proc., § 128.5]; cf. *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1220 [87 Cal.Rptr.2d 339] [Code Civ. Proc., § 128.5].)

Having concluded that Wife was given sufficient notice, we next consider whether Wife was accorded an adequate opportunity to be heard. Section 271 does not specify the nature of the hearing it contemplates. We observe,

however, that the opportunity to be heard does not necessarily compel an oral hearing. (See *Lewis v. Superior Court* (1999) 19 Cal.4th 1232 [82 Cal.Rptr.2d 85, 970 P.2d 872] [oral argument not required for peremptory writs]; but see *Titmas v. Superior Court* (2001) 87 Cal.App.4th 738 [104 Cal.Rptr.2d 803], *TJX Companies, Inc. v. Superior Court* (2001) 87 Cal.App.4th 747 [104 Cal.Rptr.2d 810], and cases cited therein.) "California courts have concluded that use of the terms 'heard' or 'hearing' does not require an opportunity for an oral presentation, unless the context or other language indicates a contrary intent." (*Lewis v. Superior Court, supra,* 19 Cal.4th at p. 1247.) Furthermore, even if a hearing is required, "due process does not necessarily require that a motion for sanctions for alleged misconduct during a hearing be heard on a separate and later hearing date." (*In re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417, 1419 [257 Cal.Rptr. 850]; see also *Monex International, Ltd. v. Peinado* (1990) 224 Cal.App.3d 1619 [274 Cal.Rptr. 667] [request for sanctions under Code Civ. Proc., § 128.5 properly heard with summary judgment motion]; *Lavine v. Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1028 [215 Cal.Rptr. 708] [request for sanctions under Code Civ. Proc., § 128.5 properly heard with motion to compel discovery].) "[T]he scope of a hearing on an application for sanctions is within the trial court's discretion, as with motions generally." (*Lavine v. Hospital of the Good Samaritan, supra,* 169 Cal.App.3d at p. 1028.)

In any event, we need not decide here whether a separate oral hearing is required before sanctions are imposed under section 271, for we conclude that Wife waived such a hearing in this case. In reaching that conclusion, we note first the lack of any evidence in the record that Wife requested a separate hearing on the sanction issue. We also note Wife's apparent acquiescence in the trial court's briefing schedule for written submission of the fee issue. Finally, it does not appear from the record that Wife moved for reconsideration or for a new trial on the fee issue. Under the circumstances, she has waived any objection she may have had on that ground. (See *Jansen Associates, Inc. v. Codercard, Inc.* (1990) 218 Cal.App.3d 1166, 1170 [267 Cal.Rptr. 516].)

### c. Consideration of Financial Burden

■ We next consider Wife's contention that the trial court erred by failing to consider whether sanctions constitute an unreasonable financial burden to her. In pertinent part, the statute provides: "The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (§ 271, subd. (a).)

On this record, there is no showing that the sanction places an unreasonable burden on Wife. (*In re Marriage of Quay, supra,* 18 Cal.App.4th at p. 970.) To the contrary, it appears from the record before us that Wife has the wherewithal to pay the award. In the 1996 marital property division, Wife was awarded real properties then worth more than $500,000. Since then, she has enjoyed capital gains from her assets. Wife also receives income from rental properties, part-time work, and spousal support.

Furthermore, there is no suggestion on this record that the trial court disregarded the evidence of Wife's ability to pay, or that it otherwise abused its discretion in awarding sanctions against her.

### 4. Fees on Appeal

Husband seeks his attorneys' fees on appeal, citing several grounds.

 Husband first requests fees as a sanction, based on his claim that Wife's appeal is frivolous as a matter of law. We do not address that request, however, because Husband failed to raise it by separate motion in this court, as required by California Rules of Court, rule 26(e).[12] (See generally Cal. Civil Appellate Practice (Cont.Ed.Bar 3d ed. 2001) §§ 20.17, p. 998, 20.27-20.28, pp. 1006-1007.)

Husband also requests appellate attorneys' fees pursuant to sections 271, 2030, and 2032. "Such a request must properly be addressed to the trial court in the first instance, and we express no opinion on that subject." (*In re Marriage of Schofield* (1998) 62 Cal.App.4th 131, 140-141 [73 Cal.Rptr.2d 1] [§ 2030]; accord, *Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 957, fn. 6 [92 Cal.Rptr.2d 182] [§§ 271, 2030-2032, 3407]; see also *In re Marriage of Paulin* (1996) 46 Cal.App.4th 1378, 1385 [54 Cal.Rptr.2d 314] [§§ 271, 2030, 2032].)

### DISPOSITION

We reverse the spousal support modification order entered August 24, 1999, and we remand that matter to the trial court for its decision whether to order the repayment of excess support paid by Husband in 1999. In making that determination, the trial court shall exercise its discretion under section 3653, subdivision (c), as currently enacted.

---

[12]That rule provides in pertinent part as follows. "A party seeking monetary sanctions on the ground the appeal is frivolous or taken solely for purposes of delay, or for an unreasonable infraction of the rules governing appeals, shall serve and file a motion under rule 41 no later than 10 days after the time when the appellant's reply brief is due or at the time of filing a motion to dismiss the appeal . . . ." (Cal. Rules of Court, rule 26(e).)

We affirm the order for sanctions entered October 7, 1999.

Husband is entitled to costs on appeal, in an amount to be determined by the trial court. The trial court may award Husband attorneys' fees, in its discretion, under any applicable Family Code provisions.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.