Filed 12/18/19; Certified for Publication 1/15/20 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NATACHE GONCALVES MENEZES, | D074434 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. DS51030) |
| TIM MCDANIEL, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Sharon Kalemkiarian, Judge. Reversed and remanded.

Dennis Temko for Plaintiff and Appellant.

Bickford Blado & Botros and Andrew J. Botros, for Defendant and Respondent.

INTRODUCTION

Following protracted postjudgment litigation over the transfer of title of real property from Natache Goncalves Menezes (Wife) to Tim McDaniel (Husband), the court issued $200,000 in sanctions against Wife, pursuant to Family Code,[1] section 271. Wife challenges the sanctions, contending they improperly include anticipated attorney fees

_____

[1]   Further section references are to the Family Code unless otherwise specified.

and costs, and the amount is not supported by substantial evidence showing they are tethered to attorney fees and costs. We conclude the superior court did not abuse its discretion by awarding the sanctions, including the anticipated fees and costs. However, we remand the matter for review to ensure that the bases for the $200,000 award include only expenses tethered to attorney fees and costs.

BACKGROUND AND PROCEDURAL FACTS

Husband and Wife were married October 9, 2004. They separated sometime in the first half of 2013, and Wife filed a petition for dissolution of marriage in June 2013.

During dissolution proceedings, the parties disputed ownership of a home on Rua Quatrini Bianchi in Brazil (the Quatrini property). Because it was difficult for Husband to purchase the property in Brazil as a foreigner, Wife completed the paperwork and purchase of the home. She had the property titled in her name. However, Husband had used separate property funds for the purchase, and the court awarded it to Husband alone. In May 2015, the court ordered Wife to transfer title to the Quatrini property to Husband's name.

The court entered judgment of dissolution in September 2015. In August 2016, Husband filed a request to enforce the judgment. Following a December 2016 hearing, the court ordered Wife to sign any documents and take any action necessary to put title to the Quatrini property in Husband's name by January 12, 2017.

When Wife failed to transfer the property to Husband by the deadline, Husband filed an order to show cause for contempt in February 2017. Wife was found guilty of contempt August 4, 2017.

2

At an August 29, 2017 review hearing, the court issued $10,000 in contempt sanctions, to be taken from Wife's community property share of an HSBC joint account where she had $8,961.50. The court directed the balance to be paid from Wife's community property interest in stock shares that had been divided during the dissolution proceedings. The court also directed Wife not to make any disposition or encumbrances on the Quatrini property. The court ordered Wife to execute a power of attorney in accordance with instructions from Husband's Brazil attorney within 30 days. The attorney provided Wife with instructions on September 26, 2017. "Any and all costs and fees associated with the transfer" of the Quatrini property were to be deducted from Wife's community property interest in the remaining shares. The specific amount was not identified.

On October 5 at an ex parte hearing, the court instructed Wife to deliver a perfected power of attorney to allow for the transfer of the Quatrini property to Husband by October 16, 2017.

On October 27, 2017, Wife sent Husband's attorney a scanned copy of the power of attorney instead of the original. Wife eventually delivered the required, original power of attorney to someone from Husband's attorney's office in front of the courthouse on a court holiday, November 10.

When Husband's attorney in Brazil began the process of transferring the property to him in early December 2017, she discovered that Wife's mother, functioning as Wife's agent through a power of attorney in Brazil, signed an agreement and admission of debt giving the Quatrini property to Wife's Brazilian attorney as payment for debt of legal fees

3

Wife owed. The transfer was approved by the Brazilian courts. Husband's Brazilian attorney filed a motion to stay the execution of the judicial lien against the Quatrini property, and the Brazilian court granted the request.

In January 2018, Husband filed a request for attorney fees and sanctions related to the ongoing litigation surrounding the Quatrini property. He requested sanctions under Family Code sections 271, 1101, 2031, 2121, 2122, and Code of Civil Procedure sections 128.5, 128.7, and 3294.[2] He sought $500,000 in sanctions plus the return of half of his retirement account of $130,000. Husband identified the following expenses related to litigating the transfer of the Quatrini property: approximately $80,000–$90,000 in California attorney fees and $17,000 in Brazil attorney fees, which included $7,000 in fees to be paid to the Brazil attorney to file the process to stop the transfer of the Quatrini property to Wife's attorney; plus an additional 10 percent of the value of the Quatrini home to be paid to the Brazil attorney. He testified to a $10,000 fee to transfer the property from Wife's name to Husband's name; delinquent property taxes amounting to a minimum of $9,000; translation fees of approximately $5,300; $18,000 in international flights to attend hearings in California; and $9,000 in lost vacation time. His attorney also told the court he would be required to pay 20 percent of the value of the property in legal fees to his Brazilian attorney, $24,127.10.

The court heard arguments in March 2018. Wife argued she had not complied with the court order to transfer the property because she was engaged in litigation over

---

[2] Because the court awarded sanctions only under section 271, we do not address the other statutes.

4

the property in Brazil, attempting to evict "squatters," residents who had been living in the home at the invitation of Husband and Wife. She told the court she did not agree to give the Quatrini property to her Brazilian attorney as satisfaction for her legal debt; the court "arrested" the home from her and "assigned" it to her Brazilian attorney. She denied knowing before November 30, 2017 that her mother had signed the relevant documents.

Husband testified that he had already paid fees and costs to his Brazilian attorney in the amount of $24,127, and he believed he would have additional fees of about $6,000 to $8,000. Translation fees had reached $5,300. He told the court he had used 34 days of vacation valued at $9,000 and had spent $18,000 in international flights to attend hearings in connection with the Quatrini property.

The court issued its order April 30, 2018. It awarded Husband $200,000 in cash sanctions under section 271. The court explained Wife's "actions thwarted any enforcement of the court's orders[] and caused protracted litigation around an issue that was heard and settled by the Court at numerous hearings—namely, the transfer of Husband's separate property home in Brazil by Wife to Husband." The court noted Wife had the ability to pay the sanctions and directed her to do so by offsetting the spousal support Husband was paying,[3] using her share of the community property stock account,

---

[3]    In its April 30 order, the court valued the spousal support offset at $28,500. The court later corrected the offset amount to $8,500. This did not impact the total sanction amount or the use of Wife's community property share of the stocks as payment.

which the court valued at $29,000, and then paying the balance remaining from other resources.

The court outlined the timeline of Wife's noncompliance with its various title transfer orders and further explained Wife "appear[ed] to have been deliberately hiding information" by giving her mother a power of attorney to deal with litigation over the Quatrini property and not informing Husband that the property had been assigned to her Brazilian attorney to satisfy a debt. The court concluded that Wife's testimony that she did not know her mother had paid the debt by transferring the Quatrini property was not credible.

Wife timely appealed.

DISCUSSION

I.

Motion to Dismiss Under Disentitlement Doctrine

In his respondent's brief, Husband invited us to affirm the trial court's judgment on the basis of the disentitlement doctrine. Wife argued in her reply that such an argument must be brought in a separate motion on appeal. Accordingly, Husband filed a separate motion to dismiss based on the disentitlement doctrine, which Wife opposed. We deny the motion.

At the superior court's direction, the parties presented proposed settled statements for the appellate record. The court set a hearing to review and correct the proposed statement. It asked the parties to explain how they created their respective summaries

6

and to provide the court with any recordings that may have formed the bases of the proposed settled statements.

The court concluded that Wife had surreptitiously recorded proceedings in violation of California Rule of Court 1.150. It found that neither it nor Husband was aware that Wife was telephonically recording the proceedings. The court adopted Husband's settled statement, with one amendment to correct the court's language.

The disentitlement doctrine "is a discretionary tool that may be used to dismiss an appeal when the balance of the equitable concerns makes dismissal an appropriate sanction. [Citation.] The rationale underlying the doctrine is that a party to an action cannot seek the aid and assistance of an appellate court while standing in an attitude of contempt to the legal orders and processes of the courts of this state. [Citation.] No formal judgment of contempt is required under the doctrine of disentitlement. [Citation.] An appellate court may dismiss an appeal where the appellant has willfully disobeyed the lower court's orders or engaged in obstructive tactics." (*Gwartz v. Weilert* (2014) 231 Cal.App.4th 750, 757-758.)

We decline to exercise our discretion to dismiss Wife's appeal. Although we do not condone a party violating the rules of court and recording proceedings without advance permission, we believe the superior court was the appropriate place to raise this concern. The superior court was aware of the violation and opted to accept Husband's proposed settled statement over Wife's. Accordingly, we deny this motion

II

Family Code Section 271 Sanctions

7

Wife contends the trial court erred in awarding $200,000 as a cash sanction because it improperly awarded anticipated fees and costs, and it included in the sanction expenses not tethered to attorney fees and costs. She asks us to reverse $68,700 in sanctions. We conclude the court properly included anticipated fees and costs in the sanction amount. However, we remand the matter for additional consideration to ensure the sanction is tethered to attorney fees and costs.

### A.

*Legal Principles*

Imposing sanctions under section 271 is within the discretion of the trial court. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478 (*Feldman*).) We reverse the award on appeal "only on a showing of abuse of that discretion, that is 'only if, considering all of the evidence viewed more favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.' " (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1524.) We review findings of fact forming the basis of a sanctions award for substantial evidence. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1226 (*Corona*).) " 'The trial court's order will be upheld on appeal unless the reviewing court, "considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." [Citation.]' " (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152 (*Sagonowsky*).)

### B.

*Anticipated Fees and Costs*

We first address Wife's contention that anticipated attorney fees and costs associated with transferring the house to Husband are not awardable under section 271.

The interpretation of a statute is a question of law, subject to de novo review. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) Here we must determine whether section 271 permits sanctions for expenses not yet incurred but reasonably anticipated. We begin by looking at the language of the statute itself. We give its words "a plain and commonsense meaning" absent a special meaning provided by the statute itself. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 577-578.) If the statutory text "is unambiguous and provides a clear answer, we need go no further." (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758.) It is only when the language supports more than one reasonable construction that we may look to extrinsic aids like legislative history and ostensible objectives. (*People v. Cole* (2006) 38 Cal.4th 964, 975.)

Section 271, subdivision (a) states: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting

9

an award of attorney's fees and costs is not required to demonstrate any financial need for the award." (§ 271, subd. (a).)

Citing Black's Law Dictionary, Wife urges us to conclude section 271 precludes an award of future attorney fees and costs because those are charges "for services performed" and "expenses incurred," definitions which use past tense. Wife argues only past-incurred charges can be awarded under section 271. Husband notes section 271 lacks any reference to the timing of the sanctioned attorney fees and costs.

There is nothing in the statute that requires the attorney fees and costs to have been incurred or charged at the time of the award. Section 271 does not use past tense; it does not reference the timing of the attorney fees and costs at all. The explicitly stated purpose of section 271 is " 'to promote settlement and to encourage cooperation which will reduce the cost of litigation.' [Citation.]" (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177 (*Petropoulos*); § 271.) " 'Thus, a party who individually, or by counsel, engages in conduct frustrating or obstructing the public policy is thereby exposed to liability for the adverse party's costs and attorney fees such conduct generates.' [Citation.]" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1319.) This includes anticipated expenses that result from the offending individual's behavior.

Reading into the statute a requirement that the attorney fees and costs must have already been incurred at the time of the award would limit a court's ability to base the award on the extent to which the party is frustrating the policy and may ignore liability the offending party's conduct creates.

10

Here, for example, Wife had already been found guilty of contempt and sanctioned for failure to comply with the court's order directing her to aid in the transfer of title to the Quatrini property to Husband's name in August 2017, almost two years after judgment was entered and a year after Husband's request for its enforcement. Despite this sanction, Wife permitted the property to be transferred to her Brazilian attorney to satisfy her debt while simultaneously continuing to delay compliance with the superior court's orders to cooperate with Husband. The court's inclusion of anticipated attorney fees and costs generated from Wife's noncompliance would deter her from creating additional delays leading to new charges. This deterrence supports section 271's stated goal of encouraging cooperation. (§ 271.)

Wife mentions in her reply brief that the anticipated attorney fees and costs are speculative.[4] Wife does not argue Husband will not incur additional fees and costs or explain why his testimony on this matter was only speculative. We will not question the superior court's judgment on this point. (*Feldman*, *supra*, 153 Cal.App.4th at p. 1478; see *People v. Snow* (2003) 30 Cal.4th 43, 66 [under the substantial evidence standard, credibility determinations are the sole province of the fact finder]; *In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175 ["We do not judge credibility on appeal."].)

---

4      The settled statement indicates Wife's attorney objected to Husband's testimony about the anticipated fees and expenses based on hearsay. The trial court required Husband to testify only to his knowledge. Wife does not argue on appeal the evidence was improperly admitted.

11

Wife argues that section 271 anticipates assessing the sanction at the end of the law suit, and Husband's decision to bring a motion for sanctions before the suit's conclusion precludes him from recovering all related fees and costs. She deems this a "problem of his own design." However, section 271 does not limit sanctions to the end of the case. Courts initially concluded that the statute contemplated assessing a sanction at the conclusion of the matter, after the severity and extent of the party's bad behavior could be evaluated (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 [discussing predecessor statute to section 271, former Civil Code, § 4370.6]), but subsequent case law concluded the statute does not require a party to wait. (*Feldman*, *supra*, 153 Cal.App.4th at pp. 1494-1495.)

Nor is there any reason that moving for sanctions earlier should disadvantage the moving party. Seeking section 271 sanctions during litigation is consistent with promoting settlement and reducing the cost of litigation by encouraging cooperation. (§ 271; *Petropoulos*, *supra*, 91 Cal.App.4th at p. 177.)

Finally, we disagree with Wife's assessment that we previously implied that anticipated attorney fees and costs could not be awarded under section 271 in the *Corona* case. In *Corona*, the husband argued the sanctions award was improper because the wife did not provide evidentiary support for the amount of attorney fees and costs she had incurred. (*Corona*, *supra*, 172 Cal.App.4th at p. 1226.) *Corona* is distinguishable because the wife only sought amounts that did not exceed the total amount of attorney fees incurred at the time of the order; whether future costs could similarly be awarded was not at issue. (See *ibid.*)

12

Here, provided there is adequate evidence that the awarded fees or costs will be incurred because of necessary actions Husband must take to remedy Wife's misconduct, these expenses can be included in the court's award.

C.

*Tethering Sanction to Attorney Fees and Costs*

Wife contends the $200,000 cash sanction under section 271 must be tethered to Husband's attorney fees and costs, and there is not substantial evidence that all of the award is tethered to attorney fees and costs. We agree, and for this reason we remand the matter for further consideration.

"The plain language of section 271 authorizes the court to impose 'attorney's fees and costs' as a sanction for conduct frustrating settlement or increasing the cost of the litigation." (*Sagonowsky*, *supra*, 6 Cal.App.5th at p. 1153.) "Here, the words 'attorney fees and costs' are not ambiguous. . . . Section 271 'means what it says'—sanctions available under the statute are limited to 'attorney fees and costs.' " (*Ibid.*) We review the court's findings for substantial evidence, (*Corona*, *supra*, 172 Cal.App.4th at p. 1226), and we consider all the evidence and view it favorably to support the court's order (*Feldman*, *supra*, 153 Cal.App.4th at p. 1478).

Wife argues in her appeal that the trial court "accepted" $334,427.10 in evidence from Husband, including stock, retirement accounts, vacation time, and anticipated future costs and fees. Husband identifies $189,427, including travel expenses, taken from the record. He argues the remaining $10,578 could have been incurred by Husband on the

13

final day of hearing, or it could have been included in the award to account for interest, as permitted. (See *Sagonowsky*, *supra*, 6 Cal.App.5th at pp. 1156-1157.)

The court did not detail the basis for its $200,000 award in its April order, and, as Wife points out, there were varying figures and fees in the record. Husband sought $630,000 in sanctions, with $130,000 as the return of half his retirement account. He detailed approximately $80,000–$90,000 in California attorney fees and $16,000–$17,000 in Brazil attorney fees, which included $7,000 in fees paid to the Brazil attorney to file the process to stop the transfer of the property to Wife's Brazilian attorney. He also testified he had already paid his Brazil attorney $24,127.10. He provided testimony that he would need to pay an additional 10 percent of the value of the Quatrini home to the Brazil attorney; a $10,000 fee to transfer the property from Wife's name to Husband's name; delinquent property taxes amounting to a minimum of $9,000, and translation fees of approximately $5,300, which may have been included in the amount he already paid his Brazil attorney. He said he spent about $18,000 on international flights to attend hearings in California; and he used $9,000 worth of vacation time. His attorney also told the court he would be required to pay 20 percent of the value of the property in legal fees to his Brazilian attorney, $24,127.10.[5]

Husband's calculation justifying the sanction amount includes $18,000 in travel expenses, a charge not tethered to attorney fees and costs as required by section 271.

---

[5] It is not entirely clear from the record why there would be a charge of 10 percent of the value of the Quatrini home for attorney fees, then a subsequent charge of 20 percent for attorney fees, or if the 20 percent included the initial 10 percent.

(See *Sagonowsky*, *supra*, 6 Cal.App.5th at p. 1153.)  While we are sympathetic that Wife's misconduct necessitated Husband's travel from his international location to court in the United States, these trips are not attorney fees or costs within the meaning of the statute.  Similarly, vacation time, used for relief from work obligations, cannot be awarded under section 271 because it is not tethered to attorney fees and costs.[6]  (See *Sagonowsky*, at p. 1153.)

We also do not agree that the court "accepted" the expenses detailed in Wife's briefing or awarded all the items Wife listed.  For example, although Wife contends the court awarded Husband a stock account valued at $30,000 and a retirement fund of $130,000 in its sanctions award, this is not supported by the record.  Husband requested the return of half of his retirement account of $130,000 in addition to $500,000 in sanctions, but the court order does not mention the retirement account.  Moreover, while the court referenced the stock account, it did so only in the context of determining how Wife should satisfy the sanction award, as is statutorily permitted.  (See § 271, subd. (c) [award of attorney's fees and costs as a sanction may be against the sanctioned party's share of community property].)  Although the court previously ordered Wife to pay fees connected with the transfer of the Quatrini property to Husband, taken from the community property interest in the stock, it is not clear what the amount was or whether that ever occurred.

---

6      Husband did not include the $9,000 lost vacation time in his estimates on appeal to reach $189,427.

15

What is clear is that Husband incurred significant fees and costs as a result of Wife's failure to comply with the court's order instructing her to aid Husband in the transfer of title to the Quatrini property.  The court did not abuse its discretion by determining the award was warranted.  However, the court's order sanctioning Wife $200,000 lacks detail that allows us to track the award to the evidence in the record.  Because there is not sufficient evidence demonstrating $200,000 tethered to charged or anticipated attorney fees and costs, we must remand the matter for further consideration.

DISPOSITION

The order of April 2018 is reversed to the extent it imposes a $200,000 sanction untethered to Husband's attorney fees and costs.  On remand, the court should include in its order information regarding the basis for the sanction to allow for meaningful review.

The parties are to bear their own appeal costs.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


AARON, J.

16

Filed 1/15/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NATACHE GONCALVES MENEZES, | D074434 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. DS51030) |
| TIM MCDANIEL, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed December 18, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to:  All parties

2