[No. A082128. First Dist., Div. Three. Dec. 17, 1998.]

MIRACLE AUTO CENTER et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
PACIFIC SPECIALTY INSURANCE COMPANY, Real Party in Interest.

---

COUNSEL

Wise, Wiezorek, Timmons & Wise, Duane H. Timmons and Stephen M. Smith for Petitioners.

No appearance for Respondent.

Low, Ball & Lynch, Raymond Coates and Janet Kulig for Real Party in Interest.

---

OPINION

**CORRIGAN, J.**—Here we conclude that the term "standard time," when used in a general commercial liability insurance policy to determine coverage expiration, means the time currently in use in the state whether standard Pacific time or daylight saving time is in effect.

*Factual and Procedural Background*

A motion for summary judgment established the following uncontradicted facts. Petitioners are Miracle Auto Center, doing business as Shoffner's Miracle Auto Mart, and Paris F. and Beverly V. Shoffner (collectively referred to as petitioner). At 12:49 a.m. on June 29, 1997, a police officer discovered a fire on petitioner's premises. The officer reported the blaze to the fire department at 12:51 a.m. Although the fire was initially small, it spread rapidly, ultimately destroying the building and several cars.

Pacific Specialty Insurance Company (Pacific) had issued a commercial general liability insurance policy (CGL) covering the property. By its terms the policy was in effect from December 7, 1996, to December 7, 1997, at "12:01 A.M. Standard Time at the Address of Named Insured As Stated Herein." Pacific issued an endorsement canceling the policy for nonpayment of the premium "effective on 06/29/97 at 12:01 A.M. standard time." Pacific denied petitioner's fire claim loss because the policy had been canceled as of 12:01 a.m. on June 29, 48 minutes *before* the fire was discovered.

Petitioner sued alleging bad faith and breach of contract and requesting declaratory judgment that the loss happened before the cancellation of the

policy.[1] Petitioner sought summary adjudication challenging Pacific's affirmative defense that the policy cancellation was effective before the fire occurred. Petitioner contended the plain meaning of the policy term "standard time" meant standard Pacific time. Thus, because daylight saving time was in effect, the fire had actually been discovered one hour earlier at 11:49 p.m. on June 28, 1997. Pacific responded that "standard time" is the time currently in effect in the state regardless of the time of year, and requested a grant of summary judgment. Pacific did not file its own cross-motion for summary judgment.

The trial court denied summary judgment, concluding a triable issue of fact existed as to the meaning of the term "standard time." The trial court did not identify what the triable issue was, as required by Code of Civil Procedure section 437c, subdivision (g). The question here is one of first impression.

*Discussion*

I.

█ The interpretation of the language in an insurance policy is a question of law. In resolving such a question courts look first to the plain meaning of the disputed term to ascertain the mutual intention of the parties. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) As a general rule of construction, the parties are presumed to know and to have had in mind all applicable laws extant when an agreement is made. These existing laws are considered part of the contract just as if they were expressly referred to and incorporated. (*Swenson* v. *File* (1970) 3 Cal.3d 389, 393 [90 Cal.Rptr. 580, 475 P.2d 852]; *Washington Internat. Ins. Co.* v. *Superior Court* (1998) 62 Cal.App.4th 981, 988-989 [73 Cal.Rptr.2d 282].) The following relevant statutes existed when the insurance contract was made and, accordingly, must be included in the interpretation of the contract.

█ Insurance Code section 460 provides[2] that the coverage inception time of an insurance contract issued in this state shall be "12:01 a.m. of the date upon which it is to be dated." Of significance to our case, the statute further provides: "Unless a specific provision of this code otherwise prescribes or permits, the hour prescribed shall be *standard time* at the residence within this state, or the principal place of business within this state, of the insured." (Italics added.)

---

[1] Petitioner also alleged below that the cancellation was invalid. That issue is not before us.

[2] The statutes as quoted have not been modified in any material way since the contract was formed.

Government Code section 6807-2, which defines "standard time," reads: "The standard time within the State, except as hereinafter provided, is that of the One Hundred and Twentieth (120th) degree of longitude west from Greenwich and which is now known, described and designated by Act of Congress as 'United States Standard Pacific Time.'"

Government Code Section 6807-3, defining "Daylight Saving Time," provides: "From 1 o'clock antemeridian on the last Sunday of April, until 2 o'clock antemeridian on the last Sunday of October, the *standard time* in this State so established shall be one hour in advance of the standard time now known as United States Standard Pacific time." (Italics added.)

Government Code Section 6807-4 prescribes the application of daylight saving time as follows: "In all laws, statutes, . . . and in all contracts or choses in actions made or to be performed in this State, the time shall be as set forth in this act and it shall be so understood and intended."

These statutes require that in all California contracts, the hour prescribed for the performance of any act shall be the time then in effect, and this time, whether it is "Standard Pacific Time" or "Daylight Saving Time," shall be known as "standard time." Incorporating these statutes into the insurance contract issued by Pacific, the cancellation endorsement must be read to have taken effect on June 29, 1997, at 12:01 a.m. No conversion to standard Pacific time may be made.

Petitioner argues that the policy should be interpreted according to how a reasonable layperson might understand the terms used. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) In support of this contention, petitioner argues that a reasonable layperson would distinguish between the concepts "standard time and "daylight saving time," and that same layperson would not look to state or federal statutes to define the terms. Petitioner relies on the definition of "daylight saving time" contained in Webster's Ninth New Collegiate Dictionary (1987) page 326, column 1 (Webster's Ninth), which states: "[T]ime usu. one hour ahead of standard time—called also *daylight time.*"

That same dictionary defines "standard time" as: "[T]he time of a region or country that is established by law or general usage as civil time; . . ." (Webster's Ninth, *supra*, at p. 1149, col. 1.) Even if we were to use petitioner's own source, the common meaning of "standard time" is the same as the statutory construction we have described above.

Of course, dictionary definitions are not dispositive. We address them only to dispose of the "layperson's understanding" argument raised by

petitioner. Legally, the meaning of the policy language is controlled by the enumerated statutes, which are deemed part of the insurance contract. The endorsement must be read to cancel the policy on June 29, 1997, at 12:01 a.m. Thus, the trial court erred in leaving this legal issue to the jury.

## II.

Having said this, we cannot direct the trial court to grant Pacific's request for summary judgment, because real party in interest did not comply with the procedures in Code of Civil Procedure section 437c and file its own cross-motion. (*Sierra Craft, Inc.* v. *Magnum Enterprises, Inc.* (1998) 64 Cal.App.4th 1252, 1254 [75 Cal.Rptr.2d 681].) This matter is remanded to the trial court to review any additional pretrial motions in light of our interpretation of the policy language.

## Disposition

The petition for writ of mandate is denied.

Phelan, P. J., and Walker, J., concurred.