[No. C040855. Third Dist. Jan. 2, 2003.]

In re the Marriage of MICHELLE and JOSEPH ABRAMS.
MICHELLE ABRAMS, Respondent, v.
JOSEPH ABRAMS, Appellant.

## COUNSEL

Codekas Family Law and Katherine Codekas for Appellant.

Eisen & Johnston Law Corporation, Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, Marian M. Johnston; Law Office of Bunmi Awoniyi and Bunmi Awoniyi for Respondent.

## OPINION

**SCOTLAND, P. J.**—Joseph Abrams appeals from the trial court's postjudgment custody order permitting Michelle Abrams to move their children from Elk Grove to San Ramon. For simplicity and to avoid confusion, we will refer to Joseph Abrams as "father" and to Michelle Abrams as "mother."

Prior to the move-away order, mother had primary physical custody of the children, and father had substantial visitation. Wanting to move with the children to the San Francisco Bay Area, mother sought the trial court's approval because the parties had previously agreed that the children's place of residence could not be moved from Sacramento County "without the written consent of both parties or until further order of the Court."

Applying the holding of *In re Marriage of Burgess* (1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473] (hereafter *Burgess*), the court concluded that mother had shown her decision to move was made in good faith, and that father had the burden of showing the move was not in the children's best interests. After approving the move, the court ordered father to pay attorney fees pursuant to Family Code section 271, which authorizes an award "in the nature of a sanction" when the conduct of a party "frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties . . . ." (Further section references are to the Family Code unless otherwise specified.)

On appeal, father contends the trial court misallocated the burden of proof and erred in awarding mother $5,000 in attorney fees. Mother disagrees and argues she is entitled to attorney fees on appeal.

For reasons that follow, we will affirm the postjudgment custody order, reverse the trial court's award of attorney fees, deny mother's request for appellate attorney fees, and remand the matter to the trial court for further proceedings.

As we will explain, the move-away provision that precluded changing the children's place of residence from Sacramento County "without the written consent of both parties or until further order of the Court" was merely a mechanism to ensure that father had notice of, and an opportunity to contest, the impending relocation before mother moved with the children from the area. If mother satisfied her burden of showing she had a good faith reason for moving and was not doing so to interfere with father's relationship with the children, the move-away provision did not relieve father of the burden of

demonstrating that relocating the children would cause them detriment, thus making it essential or expedient for their welfare that custody be transferred to him. (*Burgess, supra,* 13 Cal.4th at p. 38.)

We conclude, however, that the attorney fee award must be reversed because the evidence fails to support two of the three grounds upon which the court based the award, and we cannot say that the court would have exercised its discretion in the same fashion based only on the one valid reason.

### FACTS AND PROCEDURAL BACKGROUND

The parties' marriage was terminated by a judgment of dissolution on December 30, 1999. The trial court awarded them joint legal custody of their three children, with primary physical custody to mother and specified visitation to father.

Thereafter, they reached a mediated stipulation modifying the custody arrangement, the terms of which were adopted by the trial court on March 7, 2001. The order reflects that mother retained physical custody of the children, with substantial visitation by father.

The stipulated agreement contains a move-away restriction as follows: "Neither parent shall remove the children from the County of Sacramento, or the State of California, for the purpose of changing the children's residence, without the written consent of both parties or until further order of the Court."

On June 7, 2001, mother filed a petition for modification of visitation. She wanted to move to San Ramon for job-related reasons and because both her fiancé and her dad, whose health was declining, lived in the San Francisco Bay Area. Mother filed the petition because, due to the move-away provision, she needed a court order enabling her to relocate with the children.

The matter was referred for mediation. After interviewing the parents and the children, the mediator issued a report stating that the children's strong preference for staying in the Sacramento area should be considered by the court because they were of sufficient maturity and capacity to reason. The mediator opined that it would be detrimental to the children's best interests to be uprooted from their familiar environment, loved ones and friends, and that primary custody should be given to father if mother were to relocate.

At a hearing in July 2001, mother's attorney stated that mother no longer planned to move to San Ramon due to the mediator's recommendation, but

that mother had listed her house for sale since it was too big for her to maintain physically and financially. Mother wanted to move to Roseville where she had an opportunity for a job promotion. This would mean the children would have to move out of their present school district in Elk Grove.

The trial court ordered further mediation regarding whether this would be in the children's best interests and whether the custody arrangement should be altered. Mother was ordered to not change the children's schools in the interim.

The mediator's report disclosed that the children preferred to stay in their current school district but that, if mother was unable to find a place to live in the district, the children would prefer to continue living primarily with mother in another part of Elk Grove or in the Sacramento area, even if they had to change schools. Stating that the children were doing well under the primary care of mother and that it was in their best interests for her to continue as the primary caregiver, the mediator recommended that mother be able to change the children's schools as long as she continued to reside in the Sacramento area.

At a hearing in August, the court was informed that mother had found another house in Elk Grove, but in a different school district. Based on the mediator's report, she had enrolled the children in school because they already had missed a week of class time. Mother renewed her request to move to San Ramon, but indicated she would not do so if it meant she would lose custody. The court noted that the mediator's recommendation meant mother would have an "uphill battle" if she wished to move out of the Sacramento area.

At mother's request, the matter was set for an evidentiary hearing. Pending the hearing, the court adopted the mediator's recommendations from both of the prior reports, including the recommendation that primary physical custody be given to father if mother moved to San Ramon.

The evidentiary hearing was held before another judge in January 2002. Father argued that, as a result of the move-away restriction in the custody order, there existed a presumption that it was in the children's best interests not to have their residence changed from Sacramento and that mother had the burden to prove otherwise. The court disagreed, stating nothing in the move-away provision altered the burden of proof set forth in *Burgess, supra*, 13 Cal.4th 25. The court ruled that mother only had the burden to show her decision to move was made in good faith and was not designed to frustrate

father's parenting time with the children, and that father bore the burden to show a change of custody was in the children's best interest if mother moved to San Ramon.

After hearing the parties' evidence, the court found that mother's decision to move was made for good faith reasons in that her job required her to relocate, her fiancé lived in the Bay Area, and she desired to assist her ailing father, who also lived in the Bay Area. The court found father had not shown that his visitation rights would be affected adversely or that it would be detrimental to the children to relocate to San Ramon. The court concluded that the children's preference to stay in the Sacramento area "should not be given great weight" because it was based on their concerns about staying in the same school with their friends but that, subsequent to their interview with the mediator, they had changed to a different school in Elk Grove, had adapted well, and had made new friends.

The court further found that, even if it gave the children's preference great weight, their desire was outweighed by the close bond they had with their mother and by the fact it was in their best interest to maintain the continuity of care that she provided. In reaching this conclusion, the court considered the children's health, safety, and welfare, and noted that mother had shouldered almost the entire burden of parenting the children with regard to their schooling, medical treatments, transportation and counseling.

Accordingly, the court held it was in the children's best interest to move with their mother to San Ramon.

The court granted mother's request for attorney fees as a sanction and ordered father to pay $5,000 to mother's attorney because father's "conduct prior to trial frustrated the policy of the law to promote settlement and to reduce the cost of litigation . . . ." In support of this order, the court cited "[1] Father's unreasonable pursuit of an unmeritorious legal position, [2] [his] overreaching demand for settlement and [3] [his] admission at trial that the [real] purpose of opposing [mother's relocation with the children] was a concern for his own parenting [needs] and not a concern for the children's best interest . . . ."

## DISCUSSION

### I

Father argues the trial court erroneously relied on *Burgess* to place the burden of proof on him at the custody hearing.

■ *Burgess* addressed the burden of proof where a parent who is the primary custodial caretaker seeks to move away from the geographical area in which the child's noncustodial parent resides. (*Burgess, supra,* 13 Cal.4th at pp. 28-29.) *Burgess* treated the noncustodial parent's opposition to the move-away request as a demand for change of custody and put the burden on the noncustodial parent, as the party seeking a change in custody status, to prove that relocation would cause detriment to the minor. (*Id.* at pp. 37-38.) The custodial parent does not need to show that the move is necessary, only that the parent has sound good faith reasons for moving which are not based upon a desire to frustrate the noncustodial parent's contact with the children. (*Id.* at pp. 36, fn. 5, & 38.)

Accordingly, *Burgess* held that "the same allocation of the burden of persuasion applies in the case of a custodial parent's relocation as in any other proceeding to alter existing custody arrangements: '[I]n view of the child's interest in stable custodial and emotional ties, custody lawfully acquired and maintained for a significant period will have the effect of compelling the noncustodial parent to assume the burden of persuading the trier of fact that a change [in custody] is in the child's best interests.' [Citation.]" (*Burgess, supra,* 13 Cal.4th at p. 37.)

" '[O]nce it has been established [under a judicial custody decision] that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest.' [Citation.] [¶] The showing required is substantial. . . . [A] child should not be removed from prior custody of one parent and given to the other ' "unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change." ' [Citation.] In a 'move-away' case, a change of custody is not justified simply because the custodial parent has chosen, for any sound good faith reason, to reside in a different location, but only if, as a result of relocation with that parent, the child will suffer detriment rendering it ' "essential or expedient for the welfare of the child that there be a change." ' [Citation.]" (*Burgess, supra,* 13 Cal.4th at p. 38.)

*Burgess* noted its holding is consistent with section 7501, which gives a parent entitled to custody a presumptive "right to change the residence of [his or her minor] child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child." (§ 7501; *Burgess, supra,* 13 Cal.4th at p. 38.) "The dispositive issue is, accordingly, *not* whether *relocating* is itself 'essential or expedient' either for the welfare

of the custodial parent or the child, but whether a *change in custody* is ' "essential or expedient for the welfare of the child." ' [Citations.]" (*Burgess, supra,* 13 Cal.4th at p. 38, original italics.)

*Burgess* emphasized that "each case must be evaluated on its own unique facts. Although the interests of a minor child in the continuity and permanency of custodial placement with the primary caretaker will most often prevail, the trial court, in assessing 'prejudice' to the child's welfare as a result of relocating . . . may take into consideration the nature of the child's existing contact with both parents[,] . . . the child's age, community ties, and health and educational needs. Where appropriate, it must also take into account the preferences of the child [pursuant to section 3042, subdivision (a)]." (*Burgess, supra,* 13 Cal.4th at p. 39.)[1]

However, it is not enough to show the child has a meaningful relationship with the noncustodial parent and will be "negatively impacted" by the custodial parent's good faith decision to move. If this were sufficient to support denial of a move-away order, no primary custodial parent would ever be able to secure such an order. (*In re Marriage of Lasich* (2002) 99 Cal.App.4th 702, 717 [121 Cal.Rptr.2d 356]; *In re Marriage of Edlund & Hales* (1998) 66 Cal.App.4th 1454, 1472 [78 Cal.Rptr.2d 671].)

 Father contends the holding in *Burgess* regarding the burden of proof is inapplicable because it is premised upon a custodial parent's presumptive right to relocate under section 7501. Father argues this presumption does not apply here due to the move-away restriction in the court's custody order of March 2001. He asserts that this order reflects a preexisting exercise of "the power of the court to restrain a removal that would prejudice the rights or welfare of the child." (§ 7501.) Father posits that, because mother was the party seeking relief from this restraint in the custody order, and since the existing custody order is presumed to be in the best interest of the children, mother had the burden to show that relocation of the children would not be detrimental to them and that it would be in their best interest to move to San Ramon. Consequently, he argues, the trial court applied the wrong burden of proof, and we must remand the matter for the court to reconsider mother's request to relocate using the correct burden of proof. We are not persuaded.

Father misinterprets the effect of the prior custody order by placing too much emphasis on the place of custody, rather than the person to whom

---

[1]Section 3042, subdivision (a) states: "If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to the wishes of the child in making an order granting or modifying custody."

custody was given. Had the order granted physical custody of the children to mother but directed that custody would switch to father if mother left the Sacramento area, this would reflect a judicial determination that staying in the Sacramento area was in the children's best interests. But the order did not do this. It specifically gave primary physical custody to mother, only requiring her to obtain father's consent or a court order before she moved with the children. Accordingly, in view of the children's interest in stable custodial and emotional ties, it is presumed to be in their best interest to continue residing with mother, even if she moves. Thus, it is father, as the person seeking a change in custody, who must show a substantial change of circumstances so affecting the children's well-being that modification is essential to their welfare.

Nothing in the move-away provision expressly or implicitly affects the holding in *Burgess*. It does not state mother has the burden to show that it is in the children's best interest to move, only that she must either get father's consent or a court order before relocating with the children outside of Sacramento County.

■ Under the circumstances, all applicable laws that were in existence when the parties' stipulated agreement was made became a part of the agreement as fully as if incorporated by reference. (*Miracle Auto Center v. Superior Court* (1998) 68 Cal.App.4th 818, 821 [80 Cal.Rptr.2d 587] ["As a general rule of construction, the parties are presumed to know and to have had in mind all applicable laws extant when an agreement is made. These existing laws are considered part of the contract just as if they were expressly referred to and incorporated"]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 692, p. 625.)

■ Consequently, the move-away provision must be construed as mandating that if father did not consent to the relocation, mother had the affirmative burden, pursuant to *Burgess*, to show that she had a good faith reason for moving and was not doing so to interfere with father's relationship with the children. (*Burgess, supra*, 13 Cal.4th at pp. 36, fn. 5, & 38.) If she met this burden, father then had to be given the opportunity to show that relocation would be detrimental to the children such that a change in custody was essential or expedient for their welfare. (*Id.* at p. 38.)

In other words, the move-away provision is merely a mechanism to ensure that father had notice of, and an opportunity to contest, the impending relocation before mother moved with the children from the area. It does not relieve father of the burden to show that relocating the children would cause them detriment, thus making it essential or expedient for their welfare that custody be transferred to him.

Father contends that a plain notice provision (requiring mother to notify him if she intended to move) would have afforded him the opportunity to file a petition contesting her relocation plans. Therefore, he argues, the move-away restriction, which required mother to obtain a court order before moving, must be construed as something more than a mechanism to provide him with notice and an opportunity to be heard. (Cf. *In re Maribel T.* (2002) 96 Cal.App.4th 82, 85-86 [116 Cal.Rptr.2d 631] [juvenile court order requiring consent of mother or a court order prior to moving the child out of state exceeded the court's oral pronouncement that father must provide notice to mother prior to moving].) He contends this "something more" is a shifting of the burden of proof. We disagree.

Unlike a mere notice provision, under which the burden would be on father to seek and obtain judicial review prior to mother moving if possible, the move-away provision placed the burden on mother to obtain such review and to make the requisite good faith showing required under *Burgess* before she relocated. In other words, the move-away provision differed from a notice provision in that it ensured father would have input regarding mother's decision to move and be guaranteed a *Burgess* hearing before the move was a fait accompli.

For the reasons stated above, the trial court did not err in ruling father had the burden to establish that it would be so detrimental to the children to move to San Ramon with their mother that a change in custody to father was warranted.[2]

II

The trial court assessed attorney fees of $5,000 against father as a sanction pursuant to section 271.[3] An award of fees under section 271 is authorized where an opposing party's conduct frustrates the policy of the

---

[2]Because father has not challenged the sufficiency of the evidence in support of the court's order, we need not address the court's ultimate determination that father failed to meet this burden and that it was in the children's best interests to move to San Ramon.

[3]Section 271 states in pertinent part: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

law in favor of settlement, and increases the cost of litigation. (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177 [110 Cal.Rptr.2d 111]; *In re Marriage of Edlund & Hales, supra,* 66 Cal.App.4th at p. 1476.) ■ In reviewing such an award, we must indulge all reasonable inferences to uphold the court's order. (*In re Marriage of Petropoulos, supra,* 91 Cal.App.4th at pp. 177-178.)

Father acknowledges that we must review the court's ruling under an abuse of discretion standard (*In re Marriage of Petropoulos, supra,* 91 Cal.App.4th at p. 178), but contends such an abuse occurred in this case. ■ He argues that the reasons given by the court do not reflect obstreperous conduct like that in other cases where sanctions have been imposed for filing an unnecessary motion for reconsideration without presenting any new or different facts (*In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 82 [84 Cal.Rptr.2d 739]), pursuing a contention that was precluded by res judicata (*In re Marriage of Mason* (1996) 46 Cal.App.4th 1025, 1028 [54 Cal.Rptr.2d 263]), litigating a claim of spousal abuse in bad faith (*In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1345-1346 [33 Cal.Rptr.2d 871]), and engaging in a series of stratagems to avoid an initial failure to contest a prior agreement (*In re Marriage of Hargrave* (1995) 36 Cal.App.4th 1313, 1323 [43 Cal.Rptr.2d 474]; see also *Neal v. Superior Court* (2001) 90 Cal.App.4th 22, 27 [108 Cal.Rptr.2d 262] [husband sanctioned for filing a civil action that was duplicative of a family court action]).

As noted previously, the court based its decision to sanction father on the grounds (1) he unreasonably pursued an unmeritorious legal position, (2) he admitted at trial that his true purpose in opposing mother's relocation was a concern for his own parenting needs rather than a concern for the children's best interest, and (3) he made an overreaching demand for settlement.

As to the first point, although father's argument regarding the burden of proof has failed, it was not so devoid of merit that no reasonable person would have pursued it. Even the judge at a prior hearing stated mother would have an uphill battle if she wished to retain custody upon moving to San Ramon, thereby indicating that mother had the burden to show the move was in the children's best interests. Given the absence of authority addressing the issue, father was entitled to litigate the effect of the move-away restriction on the burden of proof.

On the second point, father claims there is no substantial evidence to support the court's finding that he admitted his true purpose in opposing mother's relocation was a concern for his own parenting needs, rather than a concern for his children's best interests. He concedes that, at the evidentiary

hearing, he testified his biggest fear about mother relocating was that his relationship with his daughters would change irrevocably. But he correctly points out this is not an admission that his purpose in opposing the move was solely self-interest, rather than the best interest of the children.

We agree the cited evidence fails to support the court's finding that father was not concerned with the best interests of the children. And mother does not point to any other evidence in the record in an attempt to show the court's finding was warranted. In light of the mediator's recommendation to place the children in father's physical custody if mother moved, which was adopted by the court pending the evidentiary hearing, it is understandable that father chose to oppose mother's relocation plans, on behalf of both the children and himself. On this record, father's concern about maintaining a close connection with his children cannot be characterized as obstreperous conduct.

We now turn to the court's third reason for imposing the attorney fee sanction, i.e., father made an overreaching demand for settlement. Father contends this reason does not support the sanction because, in his view, *any* offer to settle, no matter how onerous or one-sided, cannot be said to violate the policy in favor of settlement. Not so.

As a matter of common sense, a settlement offer that is so onerous that it will not seriously be considered by the opposing party is not designed to promote settlement, but to antagonize or to gain an unfair advantage. The court was justified in concluding father's settlement offer flouted the policy in favor of settlement because his offer can be characterized as being made in bad faith. He agreed not to oppose mother's relocation if she agreed, among other things, (1) to shoulder the entire obligation of transporting the children to and from father's residence for his parenting time, (2) to pay all daycare expenses, (3) to reduce father's child support obligation from $475 to $200 a month, which support would cease if mother remarried, (4) to not move more than 120 miles from father's residence without his written consent, (5) to pay father $10,000 in attorney fees within 14 days for costs incurred with respect to the present litigation, (6) to pay father's attorney fees if mother sought to modify the terms of the agreement at a later date, (7) to allow father to claim one of the children as a dependant on his income tax returns, and (8) to return silverware and china his mother gave to them.

As is readily apparent from this proposal, father's offer to settle was totally one-sided, imposing all of the obligations on mother and giving father all of the benefits. Mother's relocation plans did not decrease the children's need for support, yet father sought to strong-arm her into accepting a

reduction in his support obligation. He also sought to impose an unrealistic obligation to pay him $10,000 in attorney fees within two weeks, without considering whether this financial outlay would hinder mother's ability to provide for the children. More importantly, father sought to reap benefits that had nothing to do with mother's move, such as an agreement that his child support obligation would cease upon her remarriage and an agreement that she give him china and silverware.

We fail to see how father reasonably thought that mother's impending remarriage should relieve him of his responsibility for supporting his own children, or how his desire to obtain the china and silverware had anything to do with the custody issue at hand. Accordingly, the court's determination that the settlement offer was overreaching and therefore violated the policy in favor of settlement is supported by ample evidence.

Having found merit in only one of the court's three reasons for imposing the attorney fee sanction, we cannot say with any certainty that the court necessarily would have exercised its discretion in the same fashion based only on the one valid reason. Hence, we will remand the matter to the trial court for it to reconsider whether sanctions pursuant to section 271 are warranted based solely on father's overreaching settlement offer.

### III

Mother contends that she is entitled to her attorney fees on appeal because father's contention regarding shifting the burden of proof is devoid of merit.

A request for attorney fees on appeal pursuant to section 271 must be addressed to the trial court in the first instance, and we express no opinion on the subject. (*In re Marriage of Petropoulos, supra*, 91 Cal.App.4th at p. 180; Cal. Rules of Court, rule 870.2(c).)

Mother also contends that she is entitled to an award of fees pursuant to Code of Civil Procedure section 906, which we presume is a typographical error and is intended to be a reference to Code of Civil Procedure section 907.

Code of Civil Procedure section 907 states: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (See also Cal. Rules of Court, former rule 26(a)(2) ["If the appeal is frivolous or taken solely for the purpose of delay . . . , the reviewing court may impose upon

offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require"].)

Given that father's challenge to the trial court's award of attorney fees under section 271 is not frivolous, mother's request for attorney fees pursuant to Code of Civil Procedure section 907 is denied.

## DISPOSITION

The portion of the custody order awarding mother attorney fees as sanctions under section 271 is reversed, and the matter is remanded for further proceedings consistent with this opinion. In all other respects, the custody order is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 26(a)(1).)

Davis, J., and Callahan, J., concurred.

A petition for a rehearing was denied January 28, 2003, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 14, 2003.