Filed 9/27/16  Ramirez v. Garcia CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MIGUEL G. RAMIREZ,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LORENA G. GARCIA,<br><br>    Defendant and Appellant. | B268114<br>(c/w B269312)<br><br>(Los Angeles County<br>Super. Ct. No. ND061251) |

APPEAL from an order of the Superior Court of Los Angeles County.  Ana Maria Luna, Judge.  Affirmed.

Lorena Garcia, in pro. per., for Defendant and Appellant.

C. Bradford Law Firm, Caycie D. Bradford-McBee, and Karina P. Pozsar, for Plaintiff and Respondent.

_____

In this family law case, appellant Lorena Garcia (mother) (who appears in pro. per.) appeals from the trial court's postjudgment custody order, signed November 15, 2015, in which the trial court denied mother's request for a move-away order and granted the request of respondent Miguel G. Ramirez (father) for modification of the parties' custody arrangement. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties have two minor children, Roberto R. (Roberto) (now 17) and Isabel R. (Isabel) (now 9), and an older son in his 20's. Their marriage was terminated by judgment of dissolution dated December 22, 2011. As part of their stipulated settlement agreement incorporated into the judgment of dissolution, they received joint legal custody and shared physical custody, with mother's residence as the primary residence. Father had the children on alternating weekends plus two evenings a week. Their agreement contains the following move-away restriction: "Neither party shall change the residence of any minor child from the state of California without the prior written consent of the other or prior order of Court."

On June 16, 2015, mother filed a request seeking permission to move to Arizona only with Isabel, so they could "live rent-free" because living in California was no longer affordable. Mother did not explain how they would be able to live rent-free. Mother declared that she would arrange to have Isabel continue her weekend visitation with father every other weekend. Father filed a declaration in opposition, refusing to consent to the move and stating there were extended paternal and maternal family members who lived nearby and supported the children in Long Beach, making it in Isabel's best interests to continue living there. Mother's request was scheduled to be heard on August 3, 2015 in Department 16.

On July 6, 2015, father filed his own request for an order modifying the custody arrangement so that he could take primary physical custody and sole legal custody of both children, in order to keep them with their extended families and schools in Long Beach. Mother filed two separate oppositions to father's request. In her first opposition, filed on July 20, 2015, mother declared that Isabel would still have a

2

relationship with father if Isabel moved to Arizona, and that mother wanted the children to maintain their family relationships. Mother attached a handwritten letter from Isabel to father, which stated that Isabel wanted to move with mother. In her second opposition, filed on August 6, 2015, mother stated that she would not move to Arizona without a court order. She also declared that she had sole physical custody and was responsible for all of the substantial parenting responsibilities relating to education, health, religion, social and athletics; she did not believe father wanted her to have a relationship with the children; it was only through her that the children spent time with the maternal family; she had the children 128 hours per week versus father's average of 40 hours per week; Roberto did not want to live with father but with his maternal grandmother; and father had not proven that a move to Arizona would be detrimental to the children. Mother attached a letter signed by Roberto, which stated that he wanted to live with his maternal grandmother during the week and with father on alternating weekends.

On August 3, 2015, the date mother's request was originally scheduled to be heard, the trial court, sitting in Department 16, continued the hearing to coincide with father's request, noticed for August 21, 2015. Just before the continued hearing, father hired a new attorney, who, on August 18, 2015, filed a memorandum of points and authorities in opposition to mother's move-away request, a declaration of father, and a proposed parenting plan if mother moved away. Father declared that he actually spent more time with the children than stipulated because mother was sometimes unavailable; he believed mother had already moved to Arizona to live with her "boyfriend"; mother never discussed the move with him prior to enrolling Isabel in Arizona schools, in violation of their settlement agreement; the maternal grandmother lived with an abusive husband and a son with drug problems; father was much closer with Roberto than mother acknowledged; and mother has an engineering degree from USC and worked as an engineer for Raytheon, but has refused to work since the divorce.

On August 21, 2015, the two requests were sent to Department 14, where father's request for a change of custody was pending. An evidentiary hearing was held, in which both mother and father testified and were cross-examined. Mother testified that she had

3

been living in a women's shelter residence with Isabel; she had known her boyfriend for less than a year and had become engaged only recently; she and the children were able to live with the maternal grandmother but the house was too small; and both children were currently doing well in their schools. Father testified that the move to Arizona would be detrimental since it would interfere with his close "inseparable" relationship with Isabel and with Roberto; he only learned about mother's plan to move to Arizona when Isabel came crying to him about it; he has a five-year-old son with his girlfriend of six years, both of whom Isabel is extremely close to; he owns a four-bedroom house; he works from home and the only day he cannot take Isabel to school is Thursday, but his mother or nephews can take her.

The trial court denied mother's move-away order, finding no substantial change in circumstances. The court granted father's request for modification of custody. Father was given primary physical custody, mother was given visitation during alternating weekends and two evening per week, the children were ordered to remain enrolled in their current schools, and father's child support payments to mother were terminated.

This appeal followed.[1]

## DISCUSSION

"'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.) Litigants appearing in propria persona are not

---

[1]    Mother filed two notices of appeal. The first notice, filed on October 19, 2015, appears to be from the trial court's minute order dated August 21, 2015, the date of the evidentiary hearing in this case. However, a minute order is not appealable, especially where, as here, it directed father's counsel to prepare an order, which was done and which was signed by the court on November 15, 2015. Thus, the appeal in this case lies from the November 15, 2015 order, from which mother filed a notice of appeal on December 23, 2015.

4

entitled to special exemptions and are held to the same standards as litigants represented by counsel. (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

Mother contends the trial court's November 15, 2015, postjudgment order must be reversed. While she raises numerous arguments to support her contention, she has not met her burden on appeal of demonstrating reversible error, as we shall discuss below. We address her arguments in the order she raises them.

## I. *In re Marriage of Abrams* **(2003) 105 Cal.App.4th 979 (***Abrams***)**

Mother argues *Abrams* is dispositive here because it "is identical to the present case."

In *Abrams,* the mother, who had primary physical custody of the parties' three children, wished to move with the children from the Sacramento area to the San Francisco Bay area, which the father opposed. The parties had a move-away provision in their settlement, which provided that the children's place of residence could not be moved from Sacramento County "'without the written consent of both parties or until further order of the Court.'" (*Abrams, supra*, 105 Cal.App.4th at p. 983.) The trial court found that the mother had a good faith reason for moving (job relocation, fiancé and ailing father) and that the father had not shown his visitation rights would be adversely affected or that it would be detrimental to the children to move with their mother. (*Id*. at p. 986.) The reviewing court affirmed, disagreeing with father that he did not have the burden of showing detriment. The *Abrams* court concluded that the move-away provision was "merely a mechanism to ensure that father had notice of, and an opportunity to contest, the impending relocation before mother moved with the children from the area," and that if "mother satisfied her burden of showing she had a good faith reason for moving and was not doing so to interfere with father's relationship with the children, the move-away provision did not relieve father of the burden of demonstrating that relocating the children would cause them detriment, thus making it essential or expedient for their welfare that custody be transferred to him." (*Id*. at pp. 983–984, relying on *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 38.)

5

Mother, however, makes no attempt to apply *Abrams* to the facts of our case. Her opening brief does not discuss any of the evidence that was presented in either the parties' written papers or at the evidentiary hearing. Indeed, mother's brief does not include a separate statement of facts, in violation of California Rules of Court, rule 8.204(a)(2)(C), which requires an appellant's opening brief to "[p]rovide a summary of the significant facts limited to matters in the record." Even assuming father was required to show detriment, mother simply concludes that "no where in the record can it be proven that Father/Appellee proved the Move-Away was detrimental nor did he present any showing of a substantial change in circumstances." Accordingly, in her first argument, mother does not meet her burden of demonstrating reversible error.

## II. Jurisdiction

Mother argues that the trial court sitting in Department 14 lacked jurisdiction to decide her move-away request, because it was filed in Department 16 and she was not informed of the transfer. She therefore insists the order at issue is void. According to father's brief, prior to the hearing on both parties' requests for order, "the trial court re-structured case assignments between the three existing family law departments. Thus, Appellant's (Mother's) Request for Order, which was set to be heard in Department 16, was moved to Department 14 on the court's own motion." Mother claims that she appeared in Department 14 only on father's request and would have objected to having her own request heard in that department. But the reporter's transcript of the August 21, 2015 hearing, shows that the trial court in Department 14 specifically stated, "Ma'am, we'll start with your request for order that was filed June 16, 2015, request for modification." Mother made no objection. When a party fails to make an objection in the trial court, she may not raise it on appeal. (See *Rodrigues v. Superior Court* (2005) 127 Cal.App.4th 1027, 1033, fn. 6.) Under these circumstances, there is no merit to mother's argument that the trial court sitting in Department 14 lacked jurisdiction to hear her move-away request.

Mother makes additional arguments under her "Jurisdiction" heading, essentially regarding father's substitution of attorney. First, she argues that because father did not

6

file a substitution of attorney form signed by his prior attorney, Mr. R. Casey Hull, before the August 21, 2015 hearing, the trial court should have ignored the pleadings filed by his new attorney, including the memorandum of points and authorities in opposition to mother's move-away request and his declaration. Father explains in his respondent's brief that his new counsel was retained late in the proceedings and that father was unable to obtain Mr. Hull's signature on the substitution of attorney form prior to the August 21, 2015 hearing. Absent a conflict of interest, father was entitled to be represented by an attorney of his choice. Once again, mother made no objection below.

Second, mother argues that she was "misled and prejudiced" by the substitution of attorney because she believed father was representing himself. She claims she would have asked the new attorney at their required meet and confer conferences about the attorney's theory of the case and what documents would be used at the hearing. But meet and confer conferences were held. In his respondent's brief, father states that a meet and confer was attempted outside the courtroom prior to the hearing, but mother refused to participate. During the hearing, the reporter's transcript reflects that the trial court took a recess and told the parties to have another meet and confer. It is not clear to what extent mother participated in this second meet and confer. In any event, mother made no objection to father's new attorney at the hearing. Once again, mother's complaint will not be heard for the first time on appeal.

### III. "Lack of Due Process"

Mother claims that she was never served with father's memorandum of points and authorities in opposition to her move-away request or his declaration, and was thereby denied due process. Father concedes that these documents (filed with the court on Aug. 18, 2015) were not timely mailed to mother. But he points out that his attorney had copies to give to mother at the time of the hearing, and mother refused to accept them. Mother did not object at the hearing or ask for a continuance to review father's most recent pleadings.

Mother's additional argument that she had no notice father was seeking a change in custody is without merit. Mother cites to father's initial declaration in opposition to

7

her move-away request, filed on July 1, 2015. Her claim that he did not check off the appropriate boxes on this form is irrelevant, since father filed a separate request for modification of custody on July 6, 2015, to which mother filed two separate oppositions. According to father, the parties also participated in a mediation before the hearing, at which no resolution was reached. Mother also had an opportunity to, and did, cross-examine father at the hearing. Under these circumstances, her due process rights were not violated.

## IV. Attempted Amendment of Pleadings

In the longest section of her opening brief, mother argues that father's memorandum of points and authorities and declaration, both filed on August 18, 2015, constituted an improper attempt to amend his earlier pleadings, in violation of numerous authorities. However, she spends most of her time again asserting that father's initial declaration in opposition to her move-away request did not put forth the issue of custody, and argues that father's request for an order changing custody could not be used as a response to her move-away order. Father counters that his latest pleadings were not intended to replace his initial pleadings. Father concedes that his latest pleadings should have been entitled "Supplemental," but he notes they were hurriedly prepared by his new attorney hired at the last minute. In any event, father had already raised the issue of custody modification in his request for order, filed July 6, 2015, long before the August 21, 2015 evidentiary hearing. Mother does not point to any evidence or testimony presented by father at the hearing of which she was unaware prior to the hearing. Her argument has no merit.

## V. Fraud and Perjury

Mother accuses father's attorney and the attorney's associate of intentionally deceiving her because the proof of service for the memorandum of points and authorities and declaration states that the documents were mailed on August 18, 2015, when, in fact, they were not mailed until August 20, 2015, so that mother did not receive them prior to the August 21, 2015 hearing. Mother asserts that father's attorney should be subject to disciplinary action and that the associate who signed the proof of service

8

committed perjury. In his respondent's brief, father explains that his attorney and her associate were unaware at the time that the person who normally handled the office mail did not timely mail the documents, and there was no intention to deceive mother.

Mother also complains about e-mails sent by father's attorney to her regarding the postjudgment order at issue. According to mother, the statements in the e-mails "were all lies and meant to deceive mother and give her client a legal advantage." Mother's accusations are just that, and they are insufficient to cause reversal of the court's order.

## VI. Court Bias

Not content to attack only father's attorney, mother also accuses the trial court of bias against her. Mother claims the trial court acted impartially because it had not read her move-away request, erroneously placed the burden on mother instead of father to show detriment to the children, and decided the outcome of the hearing at the outset, making the hearing a mere formality. These allegations, even if true, do not demonstrate judicial bias. At most, they indicate the court did not find mother's position well taken. Mother had a full opportunity to present her case at the August 21, 2015 hearing. Mother is clearly unhappy with the court's postjudgment order, but that is not a basis for reversal.

## VII. New Argument

Under the heading, "Their New Argument," mother complains, once again, that father presented no evidence of detriment to the children. But this does not constitute a new argument being made by father of which mother was unaware.

## VIII. "Federal Question [Fourteenth] Amendment"

Mother argues that she was deprived of her Fourteenth Amendment right to due process because she received no notice concerning a custody change based upon her move-away request. Once again, mother ignores that father filed his own request seeking a change in custody, long before the August 21, 2015 hearing, to which mother filed two separate responses. There was no due process violation.

## IX. "No Option by the Court"

Mother argues that the trial court "never gave an option to mother to move and lose her custody or not move and regain her custody which was prejudicial to Mother."

9

Mother ignores that there were *two* requests before the trial court. Mother's move-away request, which the court denied, and father's request for a modification of custody, which the court granted. The option of whether mother moved or stayed in California was not dispositive to father's request.

## X. Statement of Decision

In her final argument, mother argues the trial court abused its discretion in failing to issue a statement of decision per her request. Code of Civil Procedure section 632 requires that a request for a statement of decision must be made within 10 days after the court announces a tentative decision. The trial court announced its decision on the day of the hearing, August 21, 2015. Mother waited more than three months to make her request in her motion for stay pending appeal, filed on December 7, 2015. Because her request was untimely, there was no error by the trial court.

## DISPOSITION

The postjudgment order is affirmed. Father is entitled to recover his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
HOFFSTADT

10