Filed 5/16/16  Marriage of Gordon and Stein CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re the Marriage of GILDA J. GORDON and ANDREW M. STEIN. | B260994 |
| GILDA J. GORDON, Respondent, v. ANDREW M. STEIN, Appellant. | (Los Angeles County Super. Ct. No. BD513980) |

APPEAL from orders of the Superior Court for the County of Los Angeles. Bruce G. Iwasaki, Judge.  Affirmed.

Brentford J. Ferreira for Appellant.

Law Office of Robert L. Schibel, Robert L. Schibel; Lipton and Margolin and Hugh A. Lipton for Respondent.

_____

## SUMMARY

In November 2010, Gilda J. Gordon and Andrew M. Stein stipulated in writing to a judgment dissolving their marriage. The stipulated judgment, status only, stated it was intended to be binding and enforceable, and reserved jurisdiction over all other issues. The judgment stated the parties intended to sign a further judgment on reserved issues. No further judgment had been filed when, more than a year later, Ms. Gordon died intestate.

In September 2014, almost four years after the stipulated judgment dissolving their marriage, and more than two and a half years after Ms. Gordon's death, Mr. Stein filed a request for an order setting aside the stipulated judgment dissolving the marriage. He contended the judgment was void, and the court was without subject matter jurisdiction, because (1) the parties' retirement or pension plans were not joined as parties to the dissolution proceeding, as required by Family Code section 2337;[1] and (2) the judgment had "no original signature," but only the stamped signature of the presiding judge, who "did not review, approve, or actually sign the . . . Judgment . . . ." Mr. Stein later submitted an affidavit from a deputy clerk stating she affixed the judge's stamped signature pursuant to "established criteria" and, to her knowledge, the judge did not review the stipulated judgment.

The trial court denied Mr. Stein's motion and set an order to show cause why he should not pay sanctions to Ms. Gordon's estate under section 271. After a hearing, the court ordered Mr. Stein to pay sanctions of $15,000.

We affirm both orders.

## FACTS

The stipulated judgment dissolving the marriage of Ms. Gordon and Mr. Stein (status only) was filed on November 5, 2010. Ms. Gordon and Mr. Stein had separated more than a year earlier, and the judgment indicated the case was a mediated case and identified the mediator. The stipulated judgment stated the parties intended to sign a

---

[1] Further statutory references are to the Family Code unless otherwise specified.

2

"Further Judgment on Reserved Issues" containing the executory provisions of their agreement; that either party could file the further judgment "as necessary to interpret or to enforce any of its provisions"; and that the further judgment "constitutes a mediated settlement agreement" protected from disclosure and not discoverable or admissible in any civil proceeding.

The stipulated judgment expressly stated that it constituted "the written settlement agreement of the parties with respect to its subject matter," and was "intended to be binding and enforceable" under section 664.6 of the Code of Civil Procedure. The stipulated judgment (form FL-180) also included a notice that dissolution "may automatically cancel the rights of a spouse . . . under the other spouse's . . . will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar thing. . . . You should review these matters . . . to determine whether they should be changed or whether you should take any other actions."[2]

Both parties signed the stipulated judgment, and it bears what appears to be the stamped signature of Judge Marjorie S. Steinberg. No further judgment was ever filed.

On January 18, 2012, 14 months after entry of the stipulated judgment, Gilda J. Gordon died intestate. Her sister, Marcy Gordon, is the administrator of her estate and her heir-at-law.

On September 17, 2014, Mr. Stein requested an order setting aside the stipulated judgment dissolving the marriage, contending the judgment was void.

---

**2** On the same date the stipulated judgment was filed, Gilda J. Gordon also filed a declaration stating that the parties "have agreed that the matter may proceed as an uncontested matter without notice, and the agreement is attached or is incorporated in the attached . . . stipulated judgment." Ms. Gordon's declaration further stated both she and Mr. Stein "have filed, or are filing concurrently, a *Declaration Regarding Service of Declaration of Disclosure* (form FL-141) and an Income and Expense Declaration (form FL-150)." The declaration was "for the termination of marital . . . status only," and asked the court to reserve jurisdiction over "all issues whose determination is not requested in this declaration."

3

The first basis Mr. Stein cited was section 2337. Subdivision (d) of that section states: "Prior to, or simultaneously with, entry of judgment granting dissolution of the status of the marriage, all of the following shall occur: [¶] (1) The party's retirement or pension plan shall be joined as a party to the proceeding for dissolution, unless joinder is precluded or made unnecessary" by applicable law. (*Id.,* subd. (d)(1).) Section 2337 also requires the court to enter one of three orders for each retirement plan in which either party is a participant, in order to "preserve the claims of each spouse in all retirement plan benefits upon entry of judgment granting a dissolution of the status of the marriage . . . ." (*Id.,* subd. (d)(2).)[3]

The stipulated judgment did not join any retirement plans and did not contain any of the orders mentioned in section 2337, subdivision (d)(2). (Much of section 2337 appears to apply to the severance and grant of an early and separate trial on the status issue "upon noticed motion," and states numerous conditions a court "may impose" on a party when granting a severance of the status issue. (See *id.,* subds. (a), (b), (c), (e).))

Mr. Stein also alleged on information and belief that the stipulated judgment "was not reviewed, approved nor signed by a Judicial Officer," and asserted this "failure of a Judicial Officer to review, approve and actually sign the said Judgment is one of the grounds that make this said Judgment null and void." Mr. Stein requested an evidentiary hearing so that representatives of the clerk's office could "explain under oath what actually occurred with this said Judgment."

---

[3] The three possible orders are an order "disposing of each party's interest in retirement plan benefits"; an interim order "preserving the nonemployee party's right to retirement plan benefits . . . pending entry of judgment on all remaining issues"; or an attachment to the status only judgment of dissolution, containing specified language provisionally awarding each party a separate one-half interest in all benefits under the plan as a result of employment of the other party during the marriage, and requiring the plan to continue to treat the parties as married for purposes of any survivor rights or benefits available under the plan to the extent necessary to provide for payment of the separate interest. (§ 2337, subd. (d)(2)(A)-(C).)

4

A month later, Mr. Stein filed a declaration of Pamela Woods, a deputy clerk for the superior court. Ms. Woods stated she was assigned to the Family Law Judgment Unit, and referred to the stipulated judgment. Her declaration continued:

"This Judgment was handled and processed by me on November 5, 2010 while in the Family Law Judgment Unit in Room 426. I placed all stamps that appear on this Judgment. The stamps that are located on the signature line for the Judge of the Superior Court were all placed by me while in Room 546, not by the Honorable Marjorie S. Steinberg. To my knowledge, this Judgment was not taken to Department 2 of the above-entitled Court for the review and approval of Judge Steinberg, who was then the Supervising Judge of Family Law."

In addition, Ms. Woods stated:

"At the time, the Family Law Judgment Unit was responsible for reviewing and processing judgments. A default or uncontested 'Judgment of Dissolution: Status Only' in the Central District would normally be processed by clerks in the Family Law Judgment Unit, who were authorized by the Supervising Judge of Family Law to affix her stamp to the judgment, without further judicial involvement, in those cases where the submitted judgment met established criteria. To my knowledge, Judge Steinberg did not further review the Judgment prior to the filing being made on November 5, 2010."

After a hearing on October 29, 2014, the trial court denied Mr. Stein's request to set aside the stipulated judgment, citing multiple reasons for doing so. First, Mr. Stein "fail[ed] to show that the Judgment is void on its face," because his declaration (to the effect that a judicial officer "never signed this said Judgment") was not based on personal knowledge. Second, Mr. Stein cited no legal authority for his assumption that the lack of a hand written signature "voids the Judgment," and he "conspicuously fail[ed] to address" the contrary authority of *People v. Brussel* (1932) 122 Cal.App.Supp. 785, 788-789 ("The courts seem to be generally in accord in holding that a printed or stamped signature of a court officer is a sufficient authentication, fulfilling the requirement of a signature, where such signature has, in effect, been adopted by the officer"); see also *Weiner v. Mullaney* (1943) 59 Cal.App.2d 620, 634 ("An instrument is deemed signed

5

although the signature is typed, lithographed, rubber-stamped or printed.  The foregoing methods of signature have been sustained in many cases.").  Third, Mr. Stein "[did] not acknowledge, much less rebut, the [Evidence Code section 664] presumption that the judicial officer's official duties have been regularly performed."  (The court observed the Woods declaration "demonstrates that the clerks' review of judgments was authorized by the court under established criteria.")

Finally, the trial court said, Mr. Stein failed to address the distinction between void and voidable judgments.  "Because [Mr. Stein] cannot show that the Court lacked fundamental authority over the parties or their marriage dissolution, he cannot show that the Judgment is void."  At most, the court explained, "what [Mr. Stein] calls errors – which this Court concludes were not errors at all – resulted in a Judgment that was voidable," and Mr. Stein was "too late to challenge a voidable judgment . . . ."  The court observed that Mr. Stein "[did] not even attempt to demonstrate that the Judgment is void on its face," citing *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 (*Dill*) (" 'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll.' ").

The court also rejected Mr. Stein's argument that the judgment failed to refer to the various retirement plans:  "It must be remembered that this was a stipulated Judgment that [Mr. Stein] entered after mediation, after the exchange of financial disclosures, and with the advice of counsel.  [Mr. Stein] offers no reason why he sought no correction or modification of the Judgment [until] four years after the Judgment was entered."  Further, Mr. Stein was mistaken in his belief that the absence of mandatory provisions in a judgment necessarily results in its invalidation.

At the hearing, the court concluded:  "I find this [(Mr. Stein's request to set aside the judgment)] a very, very troubling request," and set an order to show cause why Mr. Stein should not pay sanctions to Ms. Gordon's estate under section 271.  The court's minute order states:  "[Mr. Stein's] motion sought to vacate as void a judgment he stipulated to.  His request was not fully thought through and his papers displayed inadequate research.  [Mr. Stein's] conduct appears to frustrate the policy of the law to

6

reduce the cost of litigation by encouraging cooperation between parties." The court set a briefing schedule, ordered the parties to exchange unredacted attorney fee bills and to meet and confer on the appropriate amount of sanctions, and expressed confidence that counsel would resolve the issue without the need for the scheduled hearing.

The parties did not agree, and at the hearing on January 23, 2015, the court ordered Mr. Stein to pay sanctions of $15,000 to counsel for Ms. Gordon's estate under section 271. The court rejected Mr. Stein's claim of lack of notice and an opportunity to be heard, and declined Mr. Stein's request that the sanctions award be paid from what he claimed were community funds, rather than from his separate property. The court also rejected the contention that the sanctions imposed an unreasonable financial burden on Mr. Stein, observing that Mr. Stein "paid his lawyers $29,000 for the motion" and was "more than willing to spend money on a frivolous motion." The court's minute order stated the court made its findings "based on the time elapsed since the entry of the dissolution and that [Ms. Gordon] is deceased."

Mr. Stein filed timely appeals from the order denying his request to set aside the stipulated judgment and from the order awarding sanctions. The appeals were consolidated.

## DISCUSSION

Mr. Stein contends, as he did in the trial court, that the judgment of dissolution is void. He also challenges the sanctions order, contending the trial court failed to give adequate notice of the reasons for imposing sanctions. Neither contention has merit.

### 1. The Stipulated Judgment

On appeal, Mr. Stein persists in asserting that Ms. Woods, a deputy clerk, "reviewed and rendered the judgment of divorce in this case . . . ." This, he says, was an improper delegation of a judicial function to a clerk, rendering the judgment void. Mr. Stein's conclusion is plainly wrong.

We begin by noting two points. First, Mr. Stein's opening brief fails to mention that the judgment he seeks to set aside was a judgment to which he stipulated. Second, his opening brief further fails to address any of the legal authorities cited by the trial court

7

as the basis for its refusal to set aside the judgment. In short, as he did in the trial court, Mr. Stein "fails to recognize what is needed to establish that a judgment is void on its face," and fails to address the distinction between void and voidable judgments. Instead, Mr. Stein relies on two cases, one finding a dismissal entered by a clerk was void, and the other finding that a judgment was void for lack of execution by a judge. Neither case has any application here.

In *Riley v. Superior Court* (1952) 111 Cal.App.2d 365 (*Riley*), the plaintiffs' attorney filed a dismissal of the action with the county clerk after a hearing had been set on the defendant's motion for judgment on the pleadings. The trial court ordered the dismissal set aside, because the defendant had filed an answer seeking affirmative relief. (*Id.* at p. 366 [the plaintiffs had the right to dismiss the action under the statute then in effect, but only if no affirmative relief was sought by defendant in her answer].) The Court of Appeal rejected the plaintiffs' claim that the trial court acted in excess of its jurisdiction in setting aside the dismissal, observing that the clerk, "in entering the order for dismissal, acts in a mere ministerial capacity and exercises no judicial function. In exercising the power conferred, he is required to conform strictly to the provisions of the statute or his proceedings will be without binding force and any judgment entered by him will be void. [Citations.] Since affirmative relief was sought in the answer filed by defendant, the dismissal was without authority and void." (*Id.* at p. 367.) The court further noted that a court has inherent power, apart from statute, " 'to correct its records by vacating a judgment which is void on its face . . . .' " (*Ibid.*)

Like the trial court, we fail to see how *Riley* is of any relevance here. The judgment in *Riley* was "void on its face" because the record showed that the dismissal did not "conform strictly to the provisions of the statute [on dismissal]. . . ." (*Riley, supra,* 111 Cal.App.2d at p. 367.) Here, Mr. Stein did not and cannot show that the judgment – to which he stipulated – was "void on its face . . . ." (*Ibid.*)

The other case Mr. Stein cites does not assist him either. In *People v. Frontier Pacific Ins. Co.* (2000) 83 Cal.App.4th 1289 (*Frontier Pacific*), the court held that the judgment in a bail bond forfeiture case was "void for lack of execution by a judge . . . ."

8

(*Id.* at p. 1294.)  In *Frontier Pacific*, the applicable statute " 'place[d] the responsibility for entering the summary judgment on default bail on the court,' " but the summary judgment "was not signed by the judge, but by the clerk of the court." (*Ibid.*)  The Court of Appeal stated:  "What we have is a form document . . . which does not bear a judge's signature, nor even have a place for a judge's signature.  This is not effective as a judgment.  The rendition of judgment is a judicial act and under [the statute] so is entry of judgment.  A judicial act may not be delegated to the clerk." (*Id.* at p. 1295.)  Unlike *Frontier Pacific*, this is not a bail bond forfeiture case, and it is not a case where the judgment was signed by the clerk.  Mr. Stein's repeated assertion that the clerk "rendered the judgment of dissolution in this case" distorts the facts and entirely ignores clearly applicable law.

We agree, of course, that the court may not delegate a judicial act – rendering a judgment of dissolution – to the clerk.  But that is not what happened here.  Here, the judgment, on its face, contains the stamped signature of a superior court judge, not the signature of a clerk.  Legal authorities that Mr. Stein does not address have approved various methods of signature including rubber-stamped signatures.  (E.g., *Weiner v. Mullaney, supra,* 59 Cal.App.2d at p. 634.)  And Mr. Stein cites no authority for the proposition that a judge may not authorize a clerk to affix the judge's stamped signature to a stipulated judgment – a circumstance where the clerk plainly acts in a ministerial, not a judicial, capacity.  (See 2 Witkin, Cal. Procedure (5th ed. 2010) Courts, § 361 ["Many of the clerk's acts are judicial in the sense that they determine the rights of parties to the litigation; e.g., the entry of a judgment or order, default, or dismissal.  The significance of the 'ministerial' label is that the clerk has neither power to decide questions of law nor any discretion in performing those judicial duties; the clerk must act in strict conformity with statutes, rules, and orders of the court."]; see also *ibid.* ["This observation in *Page v. Superior Court* (1888) 76 C. 372[, 374] is worth noting:  'True, in determining in a particular case whether he shall make the register entry, the clerk enters into an inquiry *quasi* judicial, but this does not make him a judicial officer.  A ministerial officer is frequently required to make such an inquiry antecedently to official action.' "].)

9

Mr. Stein insists that the judgment to which he stipulated is void because, he asserts, Judge Steinberg did not actually review it before it was filed. Even if the judge did not review the stipulated judgment before it was filed, Mr. Stein cannot prevail in his contention that the judgment is void. This is apparent from the applicable legal principles that Mr. Stein ignored in the trial court and continues to ignore on appeal.

First, it is quite plain that the stipulated judgment is not void. The long-established rule is this: "A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 (*Goddard*) [citing cases]; see *Lee v. An* (2008) 168 Cal.App.4th 558, 566, 565 ["Where, as here, the court has jurisdiction over the party and the questions presented, but acts in excess of its defined power [by imposing terminating sanctions without adequate prior notice], the judgment is voidable, not void."]; see also *Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 974-975 [a default judgment entered in violation of Code of Civil Procedure section 580 [limiting relief to amount stated in complaint] is void "because it is beyond the court's jurisdiction to enter such a judgment," discussing cases].) Here, it is apparent that the court had authority over the subject matter, the question presented, and the parties, and this was not a default judgment. That being so, there is no basis to conclude the judgment is void. (*Goddard,* at p. 56 ["Once a court has established its power to hear a case, it may make errors with respect to areas of procedure, pleading, evidence, and substantive law."].)

Second, the conclusion the stipulated judgment is not void is further supported by the equally long-standing principle that, once six months have elapsed since entry of a judgment, "a trial court may grant a motion to set aside that judgment as void only if the judgment is void on its face. (*Morgan v. Clapp* (1929) 207 Cal. 221, 224.) 'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll.' (*Ibid.*)" (*Dill, supra,* 24 Cal.App.4th at p. 1441; see also *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495-496 [same; also observing that "a trial court retains discretion to grant or deny a motion to set aside a void judgment"];

10

Code Civ. Proc., § 670 [describing papers constituting the judgment roll].)  Mr. Stein, again ignoring the applicable authorities, makes no attempt to demonstrate that an inspection of the judgment roll would reveal the invalidity of the judgment.  Clearly it would not.[4]

Assuming solely for purposes of argument that the stipulated judgment here is voidable, Mr. Stein's almost four-year delay in seeking to set aside the judgment prevents him from doing so now.  (Code Civ. Proc., § 473, subd. (b); *Lee v. Ann, supra,* 168 Cal.App.4th at pp. 565-566 [" 'The difference between a void judgment and a voidable one is that a party seeking to set aside a voidable judgment or order must act to set aside the order or judgment before the matter becomes final.' "].)

Notwithstanding these authorities, Mr. Stein insists that section 2337 states that "[t]he party's retirement or pension plan *shall* be joined as a party to the proceeding for dissolution," before or simultaneously with entry of the judgment of dissolution (*id.*, subd. (d)(1), italics added).  And, he points out, section 12 provides that " '[s]hall' is mandatory and 'may' is permissive."  From this, he concludes that "the divorce in this case is void for failure to comply with the mandatory requirements of Section 2337, subdivision (d)."

Once again, Mr. Stein fails to address the pertinent authorities.  Were he to do so, he would discover that failure to comply with a mandatory rule does not necessarily result in a voidable – much less a void – judgment.  In *Goddard*, for example, the

---

**4**     We note as well that, in the case of a consent judgment (defined as "a judgment entered by a court under the authority of, and in accordance with, the contractual agreement of the parties" or as a " 'settlement' of an 'action' "), the general rule is that courts " 'will not review, on appeal, judgments and orders entered by consent.' " (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400.)  Decisions to this effect " 'proceed on the theory that by consenting to the judgment or order the party expressly waives all objection to it, and cannot be allowed afterwards, on appeal, to question its propriety, because by consenting to it he has abandoned all opposition or exception to it.' " (*Ibid.*)  The rule does not apply where consent was given only to facilitate an appeal.  (*Id.* at p. 401 [" 'In other words, we will construe the stipulation according to the intention and understanding of the parties at the time, and give effect to it accordingly.' "].)

11

husband contended the trial court acted in excess of its jurisdiction, rendering the judgment voidable, when it entered judgment despite the lack of compliance with a mandatory evidentiary rule. (G*oddard, supra,* 33 Cal.4th at pp. 55, 56.) The Supreme Court concluded the evidentiary provision was mandatory, but failure to comply with the rule was not a jurisdictional defect and was subject to harmless error review. (*Id.* at pp. 55, 58, 59.) *Goddard* observed that most procedural errors are not jurisdictional (*id.* at p. 56), but some are: "An error is jurisdictional ' "only where the clear purpose of the statute is to restrict or limit the power of the court to act and where the effective enforcement of such restrictions requires the use of extraordinary writs of certiorari or prohibition." ' [Citation.]" (*Id.* at p. 57.) We see no basis in the language of section 2337 from which to conclude that its " ' "clear purpose" ' " was " ' "to restrict or limit the power of the court to act . . . ." ' " (*Goddard, supra,* at p. 57.)

Undeterred, Mr. Stein asks us to take judicial notice of 331 pages of the legislative history of the 2007 amendments to section 2337. We decline his request as both irrelevant and unnecessary. It is irrelevant because the legislative history has nothing to do with the only relevant issue in this case: whether the stipulated judgment is void, a point as to which the legal authorities are clear. And it is unnecessary because, as Mr. Stein himself points out, the purpose of the 2007 amendments to section 2337 was "to provide the court with tools necessary to protect parties' community property interest in retirement benefits after the status dissolution is entered and before final resolution of all property issues." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 861 (2007-2008 Reg. Sess.) as amended Mar. 29, 2007, p. 4; cf. *Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 440, fn. 18 [judicial notice of legislative history materials generally available from published sources is unnecessary].) Plainly, the "clear purpose" of the amendments to section 2337 had nothing to do with " ' "restrict[ing] or limit[ing] the power of the court to act . . . ." ' " (*Goddard, supra,* 33 Cal.4th at p. 57.)

In sum, we are presented with no legal authorities supporting the proposition that the judgment of dissolution to which Mr. Stein stipulated, and which is plainly valid on

12

its face, should now be found void. There was no error in the trial court's refusal to vacate the judgment.

## 2.     The Sanctions Order

Under section 271, the court "may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction." (*Id.*, subd. (a).) An award under section 271 "shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." (*Id.*, subd. (b).)

"The purpose of section 271 is ' "to promote settlement and to encourage cooperation which will reduce the cost of litigation." [Citation.]' [Citation.] 'Family law litigants who flout that policy by engaging in conduct that increases litigation costs are subject to the imposition of attorneys' fees and costs as a sanction. [Citations.]' [Citations.]" (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1176-1177.) We review an attorney fee award under section 271 for abuse of discretion, and " ' "we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citations.]" [Citation.]' " (*Id.* at p. 1177, fn. omitted.)

Mr. Stein contends the trial court did not give adequate notice of the reasons for imposing sanctions. He cites *In re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417, 1421-1422, where the court reversed a Code of Civil Procedure section 128.5 sanctions order, because the ground for sanctions stated in the formal order imposing sanctions was an entirely different ground from the grounds stated before the order was rendered. (*Id.* at p. 1421 [the grounds in the court's order "were not asserted as a basis for sanctions, by either [the husband] or the judge, at any time before rendition of the sanctions order," so the wife's counsel "had no reasonable opportunity to respond since he could not have known of the *need* to respond as to those grounds."].) This is not such a case.

13

The reasons for imposing sanctions are clear, both from the transcript of the October 29, 2014 hearing at which the court set the order to show cause on sanctions ("I find this [(Mr. Stein's request to set aside the judgment)] a very, very troubling request"), and from the trial court's minute order of that date. The minute order is clear that in the court's view, Mr. Stein's motion had no basis in the pertinent authorities, as Mr. Stein "sought to vacate as void a judgment he stipulated to," his request "was not fully thought through and his papers displayed inadequate research," and his conduct "appears to frustrate the policy of the law to reduce the cost of litigation by encouraging cooperation between parties." These reasons could scarcely be clearer. Further, the court set a hearing for almost three months later; required the parties to file a joint statement; and allowed briefing prior to the hearing date. In short, "this record clearly demonstrates that [Mr. Stein] had adequate notice that [he] might be sanctioned under section 271." (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 178.) The record likewise demonstrates Mr. Stein was given a full opportunity to be heard on the issue. (*Parker v. Harbert, supra,* 212 Cal.App.4th at p. 1178 ["Due process requires a party be given notice and an opportunity to be heard before a court imposes sanctions under section 271."].)

Finally, Mr. Stein makes a one-paragraph argument that the trial court abused its discretion, stating his claims were "not frivolous" and referring to an asserted lack of settlement prospects in the ongoing probate court case. Both assertions are irrelevant to this case. (See *Parker v. Harbert*, *supra,* 212 Cal.App.4th at p. 1177 [" '[s]ection 271 does not require that the sanctioned conduct be frivolous or taken solely for the purpose of delay' "]; *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1227 ["sanctions under section 271 are justified when a party has unreasonably increased the cost of litigation"].) There was no abuse of discretion.

14

## DISPOSITION

The orders are affirmed.  Mr. Stein is to pay costs on appeal.


GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.



FLIER, J.